1

The Honorable Benjamin H. Settle

2

3

4

5

6

7

8

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

9    NATHEN BARTON,

10       Plaintiff,

11    v.

12    SERVE ALL, HELP ALL, INC.; and JOHN
      DOE 1-10 1-10, inclusive,

13

      Defendants.

14

**CASE NO. 3:21-cv-05338-BHS**

**MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
Friday July 30, 2021

15

## NOTICE OF MOTION AND MOTION

16          To the Clerk of the Western District of Washington and all parties and their attorneys of

17    record:

18          Please take notice that Defendant SERVE ALL, HELP ALL will and hereby does move

19    this court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the

      claims of plaintiff Nathen Barton ("Plaintiff") with prejudice, for failure to state a claim upon

20    which relief may be granted.

21          This motion is based on this Notice of Motion and Motion, the accompanying

22    Memorandum of Points of Authorities in support thereof, the pleadings on the file with the

      court, and such arguments and authorities as may be presented at or before the hearing.

**MOTION TO DISMISS**
Page  1
.3:21-cv-05338-BHS

1

2

**STATEMENT OF ISSUES**

3

4

Pursuant to Fed. R. Civ. P. 12(b)(6), SERVE ALL, HELP ALL moves to dismiss Plaintiff's claim brought under the Telephone Consumer Protection Act ("TCPA", 47 U.S.C. § 227(b)(1)(A)(iii), on the following grounds:

5

6

7

1. Plaintiff fails to plausibly allege that the alleged telephone calls were sent with an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), which is a necessary element of plaintiff's TCPA claim.

8

9

10

2. Plaintiff fails to plausibly allege that the alleged telephone calls were not "conducted to induce purchases of goods or services, or a charitable contribution, donation, or gift of money or any other thing of value" as defined in the definition found in 47 U.S. Code § 227(a)(4), which is a necessary element of plaintiff's TCPA claim.

11

12

13

3. Plaintiff's Complaint fails to state a claim because it does not allege any plausible set of facts that would show it is not within the charity exemptions nor emergency purposes.

14

15

4. The First Amendment prohibits restricting the alleged calls because they are non-commercial charitable offers of service, not solicitations for donations or sale of products or services.

16

**INTRODUCTION**

17

This case is not about spam phone calls sent to random numbers to acquire donations or sell products. Rather, Plaintiff is complaining about the offer of services free of cost by a charitable organization to those undergoing a real property foreclosure. The charity is providing such services to those in need, as to assist in preventing the recipient of the services from losing their home due to inabilities to navigate, assess, and address any errors that the mortgage companies and collection agencies may make, possible dispute resolutions, and other significant contributions to the recipients.

18

19

20

21

22

**MOTION TO DISMISS**
Page  2
.3:21-cv-05338-BHS

An offer to provide services free of charge is a far cry from the typical impersonal automated messages prohibited by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, and do not support a claim for four (4) separate reasons.

First, Plaintiff does not adequately allege that these calls were sent by an "automated dialing system," or "ATDS," to phone numbers that are "random[ly] or sequential[ly] ... generat[ed]"—a core element of Plaintiff's TCPA claim. 47 U.S.C. § 227(a)(1). Although plaintiff alleges in a conclusory fashion that "[t]he entity placing the call used an automated dialing and announcing device, commonly know as a robocall" in violation of the TCP. Compl. Paragraph 1 page 3. Calls are not placed by random number generation, but specifically to those undergoing real property foreclosure. Such calls are exempt from application of the TCPA. *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021). Although Plaintiff alleges such, his own allegations and description of the call show that the allegation is implausible. Plaintiff acknowledged his own mortgage foreclosure, as well as requested further information about assistance that could be provided. See Plaintiff's Exhibit A, demonstrating that an email address was provided during the phone call to obtain additional information.

Second, Plaintiff's Complaint fails to state a claim because the alleged calls did not solicit a donation or sale of products sold by Plaintiff. as that it does not meet the definition of the word solicitation, or the legal definition, a core element of Plaintiff's TCPA claim. 47 U.S.C. § 227(a)(4), Although Plaintiff alleges in a conclusory fashion that the charity "requested money" for outside services, and "takes a portion of those payments" to vendors Page 4, lines 4-15. When one's home is under foreclosure, there may be associated costs to prevent such foreclosure, one cannot simply demand the charity pay all expenses and debts incurred to the recipient of free services and then conclude all costs were caused by that charity, and that the charity was profiting from such costs. Costs to a debtor that are incurred by services, credit reports, court fees, bank charges, or the underlying debt on the real property are not simply obvious, or reasonably connected to a demonstration that the charity is profiting

**MOTION TO DISMISS**
Page 3
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

1

2

from such costs. There is no credible information alleged that demonstrates a connection of the charity itself is profiting from costs that occur to someone undergoing home foreclosure.

3

4

5

Third, the calls fall clearly within the exemption within TCPA's broad exemption for any "call made for emergency purposes," 47 U.S.C. § 227(b)(1)(A), as well as within the spirit of exemptions for charities, because the call was placed for the express purpose of providing immediate notice of services available to prevent loss of a home.

6

7

8

9

Fourth, calls cannot be restricted under the First Amendment because they are non-commercial messages to protect individual consumers' property foreclosure. These calls were not an attempt to collect a debt, nor solicit donations or payments, but rather to offer free assistance from a charitable organization to prevent loss of a home, the same interest that the TCPA seeks to protect.

10

11

Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim under the TCPA.[1]

12

### STATEMENT OF FACT

13

14

15

16

17

18

19

Plaintiff has filed a complaint against SERVE ALL, HELP ALL, arising out of a charitable offer to assist and offer guidance for Mr. Barton's mortgage foreclosure proceedings, for which Mr. Barton engaged in the conversation and implied he would be open to assistance. Subsequently, Mr. Barton then claimed that this offer of assistance was a "solicitation," a transaction that was to extract payment from Mr. Barton, for the financial benefit of the charity. Mr. Barton subsequently filed a small claims case against SERVE ALL, HELP ALL, followed by withdrawing that action and filing with this court, claims of violation of the Federal Telephone Consumer Protection Act of 1991, known as the TCPA.

20

21

22

[1]It is questionable whether Plaintiff has Article III standing for his TCPA claim at all. He insufficiently alleges an economic injury, namely, that the telephone number was service for which Plaintiff incurs charges. But Plaintiff does not allege that he pays incrementally for each call he receives or that he in fact paid for the alleged calls. Indeed, based on his boilerplate allegation, it is just as likely that he pays for unlimited calls, or is not charged for incoming calls, as part of his cell phone service. If Plaintiff's cell phone service includes unlimited calls, or that his land line does not charge for incoming calls, then he cannot have suffered the alleged economic injury, because he has not paid for any of the allegedly infringing calls. SERVE ALL, HELP ALL is entitled to, and does not waive its right to, bring this standing argument at a later time. See *Chapman v. Pier 1 Imports* (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) ("The existence of Article III standing is not subject to waiver.")

**MOTION TO DISMISS**
Page  4
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Plaintiff alleges that "Plaintiff is suing in part under the federal statutes the Telephone Consumer Protection Act of 1991, known as the TCPA" and that **SERVE ALL HELP ALL**"[t]he entity placing the call used an automated dialing and announcing device, commonly known as a robocall." The TCPA addresses communications "conducted *to induce purchases of goods or services, or a charitable contribution, donation, or gift of money or any other thing of value*" as defined in the definition found in 47 U.S. Code § 227(a)(4) (emphasis added), which is a necessary element of plaintiff's TCPA claim, and makes it "unlawful ... to make any call (*other than a call made for emergency purposes* or made with the prior express consent of the called party) using any *automatic telephone dialing system* . . . to any telephone number assigned to a ... cellular telephone service ... for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A) (emphasis added). Congress passed the TCPA in 1991 in response to "increasingly intrusive automated telemarketing directed at individual consumers, particularly where the calls employed artificial or prerecorded messages." Paul F. Corcoran, Marc J. Rachman, David S. Greenberg, The Telephone Consumer Protection Act: Privacy Legislation Gone Awry?, 26 Intell. Prop. & Tech. L.J. 9, 11 (2014).

But this case does not involve spam texts or telemarketing, an essential element of a TCPA claim. Plaintiff's claim is lacking in numerous requirements of a TCPA claim, as it was not "to induce purchases of goods or services, or a charitable contribution, donation, or gift of money or any other thing of value," it was for "emergency purposes," and did not use an "automatic telephone dialing system."

The numbers were not randomly generated, a critical element in a TCPA claim. See *Facebook, Inc. v. Duguid,* 141 S.Ct. 1163 (2021). Therefore the Plaintiff's claim fails on this element. The call was an offer of assistance from a charity, not a request for donation or sale of service. And, the call was placed for emergency purposes, specifically to provide resources and guidance during a foreclosure process. Therefore the call would fall under the emergency exception to TCPA.

**MOTION TO DISMISS**
Page 5
.3:21-cv-05338-BHS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim is facially plausible 'when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McKenna v. WhisperText*, No. 5:14–cv–00424–PSG, 2015 WL 428728, at *2 (N.D. Cal. Jan. 30, 2015) (quoting Iqbal, 556 U.S. at 663). "formulaic recitation of the elements of a cause of action" will not suffice on a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "'To be entitled to the presumption of truth, allegations in a complaint … must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'" *Thompson v. Permanente Med. Grp., Inc.*, No. 12-CV-01301-JST, 2013 WL 1808897, at *2 (N.D. Cal. Apr. 29, 2013) (*quoting Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. In evaluating a complaint's allegations on a motion to dismiss, a court may also "consider exhibits attached to the complaint, documents incorporated by reference into the complaint, and judicially noticeable facts." *Sepehry-Fard v. MB Fin. Servs.*, No. 13-CV-02784-BLF, 2014 WL 2191994, at *2, n.1 (N.D. Cal. May 23, 2014); see also *Van Hook v. Curry*, No. C 06-3148 PJH (PR), 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings."). Dismissal is appropriate "where the complaint lacks . . . sufficient facts to support a cognizable legal theory." *Thompson*, 2013 WL 1808897, at *2; see also *WhisperText*, 2015 WL 428728, at *2.

**ARGUMENT**

The Complaint should be dismissed for four (4) independent reasons. First, Plaintiff alleges no plausible set of facts showing that the call was made using an ATDS, which is a

**MOTION TO DISMISS**
Page 6
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

required element of his TCPA claim. Second, Plaintiff alleges no plausible set of facts that the call was for the purpose of extracting financial or material considerations of any kind, which is a required element of his TCPA claim. Third, the alleged calls fall within the scope of TCPA's explicit exception for "emergency" calls and spirit of the charitable exemptions within the TCPA. And Finally, construing the TCPA to prohibit charities from offering aid to those in need would violate the First Amendment, and the Court should either construe the TCPA as not prohibiting the charity from calling to offer aid to those in need, see *INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001), or hold that the TCPA violates the First Amendment as applied here. *See*, e.g., *Baranski v. NCO Fin. Sys.,* No. 13 CV 6349, 2014 WL 1155304 (E.D.N.Y. March 21, 2014) (dismissing TCPA action under Rule 12(b)(6)); *Baranski¸* No. 13 CV 6349, D.E. 41, at 3 (E.D.N.Y. April 18, 2014) (confirming dismissal was with prejudice).

## I.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT ALLEGE ANY PLAUSIBLE SET OF FACTS THAT WOULD SHOW THE CALLS WERE SENT USING AN ATDS.

Because Plaintiff claims a violation of the automated call provision of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), he must allege that the system used to make the alleged calls is an ATDS; otherwise, "the TCPA does not apply." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021). *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014); see also *Gragg v. Orange Cab Co*., 995 F. Supp. 2d 1189, 1192 (W.D. Wash. 2014); *Glauser v. GroupMe, Inc*., No. C 11-2584 PJH, 2015 WL 475111, at *5 (N.D. Cal. Feb. 4, 2015). Plaintiff's Complaint fails to adequately allege "the use of an ATDS." *WhisperText*, 2015 WL 428728, at *3; see also Baranski, 2014 WL 1155304, at *6.

The TCPA expressly defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, ***using a random or sequential number generator***; and(B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). The use of a "random or sequential number generator" is—based on the "clear and unambiguous" statutory language—an essential part of an ATDS. See *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir.2009) (finding statutory definition of ATDS "clear and

**MOTION TO DISMISS**
Page  7
.3:21-cv-05338-BHS

1
2
3

unambiguous."). "Random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111–1111, (111) 111–1112, and so on*." Gragg,* 995 F. Supp. 2d at 1193 (internal quotations and citations omitted).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

To allege adequately that calls were made using an ATDS, a complaint must do more than "parrot the statutory language." *Baranski,* 2014 WL 1155304, at *6. "[T]he vast majority of courts to have considered the issue have found that a bare allegation that defendant used an ATDS is not enough." Id. (collecting cases) (internal citations and quotations omitted). But that is all Plaintiff offers here: the bare allegation that the phone calls "were made with an ATDS" and omitted the statutory language that the alleged ATDS "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (Compl. ¶¶ 29-30.) Plaintiff alleges no facts that would plausibly satisfy the statutory ATDS requirement. 47 U.S.C. § 227(a)(1); *see also Jones v. FMA Alliance Ltd*., 978 F. Supp. 2d 84, 87 (D. Mass. 2013) (dismissing complaint where "the sole reference ... in the complaint as to the use of ATDS" stated that "'Defendant used an [ATDS] as defined by 47 U.S.C. § 227(a)(1) when it made each and every call to Plaintiff's wireless number'"); *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (dismissing complaint where text messages sent were "similar in content, but differ enough to make it appear as if an ATDS was not utilized"). Nor does Plaintiff allege any facts that would plausibly show that SERVE ALL, HELP ALL'S equipment has the capacity to "generate numbers and dial them without human intervention," I*n Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, Report and Order, 27 F.C.C.R. 15391, 15392, n.5 (2012), which the FCC has ruled may also qualify equipment as an ATDS even in the absence of a random or sequential number generator. See *Baranski,* 2014 WL 1155304, at *6 (holding the allegations failed to support a plausible inference that "the calls could be made without human intervention"). 6

22

In fact, Plaintiff's other allegations and the exhibits attached to his Complaint "tend[] to **refute** the claim that Defendant[] [was] using an ATDS." *Snyder v. Perry*, No. 14–CV–2090,

2015 WL 1262591, at *8 (E.D.N.Y. March 18, 2015) (dismissing complaint for failure to allege ATDS) (emphasis added). Far from alleging en mass distribution to randomly or sequentially generated 7 numbers, Plaintiff plainly alleges that the information provided would in fact be regarding his own home foreclosure, and discussed issues tailored to his specific circumstance. These facts do not plausibly show that others received the same calls at the same time.

Because Plaintiff's own pleading, taken as true, establishes that human intervention is required at every stage of identifying those in need of assistance, and the phone numbers are not randomly or sequentially generated, Plaintiff's allegations cannot plausibly show that calls were sent using an ATDS. See Marks, 55 F. Supp. 3d at 1292; GroupMe, 2015 WL 475111, at *6. This "preclude[s] the need for discovery to address whether [Plaintiff] has alleged the use of an ATDS." *WhisperText*, 2015 WL 428728, at *4 & n.36 (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim[.]")).

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE ALLEGED CALLS DID NOT SOLICIT A DONATION OR SALE OF PRODUCTS SOLD BY PLAINTIFF.

In addition to Plaintiff's other failures to plead a plausible claim under the ATDS, his claims fail for the independent reason that the alleged calls were "conducted to induce purchases of goods or services, or a charitable contribution, donation, or gift of money or any other thing of value" as defined in the definition found in 47 U.S. Code § 227(a)(4), which is a necessary element of plaintiff's TCPA claim. "There has been some confusion throughout this litigation with respect to how to define the term "telemarketing." Compare Telemarketing and Consumer Fraud and Abuse Prevention Act of 1994, Pub.L. No. 103-297, 108 Stat. 1545 at §§ 7 (1994) ("Telemarketing Act") (defining "telemarketing" as calls "conducted to induce purchases of goods or services") with Mainstream Mktg. Servs., Inc. v. FTC, 283 F.Supp.2d 1151, 1154 (D.Colo.2003) (describing "telemarketing" as the practice of "soliciting sales and donations" conducted by businesses, charities, political organizations, and others). Unless

**MOTION TO DISMISS**
Page 9
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

otherwise indicated, we use the term "telemarketing" to refer to commercial sales calls made to induce purchases of goods or services (not charitable or political fundraising) consistent with Congress' definition in the Telemarketing Act. Mainstream Marketing Services, Inc. v. F.T.C., 358 F.3d 1228 (10th Cir. 2004)" Mainstream Marketing Services, Inc. v. F.T.C., 358 F.3d 1228, at fn6 (10th Cir. 2004).

In the present case, the Plantiff has failed to demonstrate that the alleged calls meet any such definitions, as they offered a needed service, offered by a charity, rather than for the purpose of soliciting donations or inducing a sale for a product. To presume that all costs of keeping a home that is in default from foreclosing, it is more than several step to link the costs should all be paid by the charity, simply because they offered guidance through the process. It's akin to both stating by offering a day of handy work by a workman in church, you are then liable for all repair costs and materials that the church requires. Such a step is far beyond the scope of the intent of the TCPA. The fact that a service was offered by a charity without any requirement of payment to the charity demonstrates precisely the opposite of the inducement to extract funds from the call recipient. Plaintiff's own admissions about the nature of the call itself preclude the conclusion of the purpose of the call, and therefore fails to satisfy this requirement of a TCPA. Once again, the plaintiff can plead himself out of court by alleging facts which show that he has no claim.

III.     **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT DOES NOT ALLEGE ANY PLAUSIBLE SET OF FACTS THAT WOULD SHOW IT IS NOT WITHIN THE CHARITY EXEMPTIONS NOR EMERGENCY PURPOSES.**

Beyond Plaintiff's failure to plead the use of an ATDS, his claims fail for the independent reason that the alleged calls are "made for emergency purposes." In enacting the TCPA, Congress provided an express exception for calls "made for emergency purposes." 47 U.S.C. § 227(b)(1)(A). Plaintiff alleges in conclusory fashion that the login notifications "were not made for emergency purposes." (Compl. ¶ 32.) But that allegation is not plausible. It is

**MOTION TO DISMISS**
Page 10
.3:21-cv-05338-BHS

belied by Plaintiff's own allegations and attached exhibits, which explain that calls are a charitable effort to assist in the very circumstance Plaintiff was in regarding home foreclosure.

The FCC has already ruled that the emergency exception applies to calls made by utility companies to alert customers about service outages, interruptions, or the possibility that delinquent billing could lead to a service outage. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* Report and Order, 7 F.C.C.R. 8752, 8777-78 (1992). Because service outages and interruptions pose public health and safety risks, the Commission explained that "the use of prerecorded message calls could speed the dissemination of information regarding service interruptions or other potentially hazardous conditions to the public." Id.

Similarly, companies in the financial sector routinely maintain sensitive personal and financial information about consumers. Federal agencies have explained that calls that would otherwise be prohibited under the TCPA, but are made to warn consumers of potential identity theft fall within the TCPA' emergency exception. See FDIC, OCC and Board of Governors of the Federal Reserve's Interagency Guidance On Response Program For Information Security Breach, 2009 WL 2656073, ¶¶ 100-259 ("Financial institutions will give customer notice under the final Guidance for a public safety purpose, namely, to permit their customers to protect themselves where their sensitive information is likely to be misused, for example, to facilitate identity theft. Therefore, the Agencies believe that the exemption for emergency purposes likely would include customer notice that is provided by telephone using an artificial or prerecorded voice message call."); see also National Credit Union Administration's Compl. Guide for Cr. Unions, NAFCUCG 33 Ex. 33.6 (stating the same with respect to credit unions). The same reasoning applies to SERVE ALL, HELP ALL, calls. They are made for an emergency purpose, as that the loss of a family home during difficult times such as created by the COVID-19 epidemic, have been devastating to this country, leaving those unable to navigate the foreclosure process unaware of the resources available to them.

**MOTION TO DISMISS**
Page 11
.3:21-cv-05338-BHS

1
2
3
4
5
6
7
8

The conclusion that calls are "made for emergency purposes," 47 U.S.C. § 227(b)(1)(A), is consistent with Congress's and the FCC's admonition that the term "emergency" should be interpreted "broadly rather than narrowly," and "to include situations in which it is in the public interest to convey *information to consumers concerning health or safety*, whether or not the event was anticipated or could have been anticipated." *In the Matter of the Tel. Consumer Prot. Act of 1991*, Notice of Proposed Rulemaking, 7 F.C.C.R. 2736, 2738 (1992) (emphasis added). The FCC has also ruled that "[t]he term emergency purposes means calls [or text messages] made necessary in any situation affecting the <u>health and safety</u> of consumers." 47 C.F.R. § 64.1200(f)(4) (emphasis added).

9
10
11
12
13
14

That conclusion is also consistent with the Ninth Circuit's conclusion that "the purpose and history of the TCPA indicate that Congress was trying to prohibit use of Automatic Telephone Dialing Systems in a manner that would be an invasion of privacy." Satterfield, 569 F.3d at 954. Thus, courts in this circuit "broadly recognize that not every text message or call constitutes an actionable offense; rather, the TCPA targets and seeks to prevent 'the proliferation of intrusive, nuisance calls.' " *Ryabyshchuck v. Citibank* (S.Dakota) N.A., 2012 WL 5379143, at *2 (S.D. Cal. Oct. 30, 2012) (quoting *Mims v. Arrow Financial Services*, *LLC*, 132 S. Ct. 740, 744 (2012)).

15
16
17
18

Accordingly, these courts have declared that "[c]ontext is indisputably relevant to determining whether a particular call is actionable [under the TCPA]," *Ryabyshchuck*, 2012 WL 5379143 at *3, and that application of statutory liability for any given call or text must be done with a "'common sense' approach." *Freidman*, 2013 WL 3026641, at *4 (quoting *Chesbro v. Best Buy Stores, L.P*., 2 705 F.3d 913, 918 (9th Cir. 2012)).

19
20
21
22

FURTHER, the TCPA provides numerous exceptions for charity organizations, even when charity organizations are soliciting donations. To ignore both the intent to allow charities to solicit donations is relevant, as that to suggest an offer to provide services to those in need is a step even beyond the exception carved out for charities. Since, in the present case, Plaintiff is trying to apply the TCPA to a charity, which is offering emergency services "broad" except, 7

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

1  F.C.C.R. 2736, goes directly against the letter and the intent of this legislation, and clearly is

2  outside of the intent of the legislation. *Ryabyshchuc*k, 2012 WL 5379143 at \*4.

3

4  **IV.    APPLYING THE TCPA TO THE ALLEGED CALLS WOULD VIOLATE THE FIRST AMENDMENT.**

5

6      Imposing liability on SERVE ALL, HELP ALL for sending non-commercial, charity

7  funded services offered at no cost to the recipient is both inconsistent with the plain meaning

8  of the ATDS and emergency exception provisions, and also would also violate the First

9  Amendment. A defendant has the right to attack defects apparent on the face of a complaint

10  through a motion to dismiss. See, e.g., *Sams v. Yahoo, Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)

   ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss

   where the allegations in the complaint suffice to establish the defense.").

11      In contrast to many other TCPA cases involving First Amendment challenges, the

12  "calls" at issue here are not commercial speech. See, e.g., Gomez v. Campbell-Ewald Co., 768

13  F.3d 871, 873 (9th Cir. 2014) (advertisement to join the Navy), cert. granted (May 18, 2015);

   *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1255 (S.D. Cal. 2012)

14  (advertisement for oil change); *Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at

15  \*1 (N.D. Ill. Oct. 30, 2012) (advertisements for products, goods, and/or services); *Lozano v.*

16  *Twentieth Century Fox Film Corp.*, 702 F. Supp. 2D 999, 1001 (N.D. Ill. 2010) (advertisement

17  for film); *Joffe v. Acacia Mortgage Corp.*, 211 Ariz. 325, 327 (Ct. App. 2005) (advertisement

   for mortgage rates). They are emergency messages that alert callers of processes and services

18  available free of charge by a charity so that they do not lose their family home. This distinction

19  matters because the First Amendment affords greater protection to noncommercial speech than

20  it does to commercial speech. See *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 248 (9th

   Cir. 1988). The government cannot selectively prohibit noncommercial speech based on its

21  content. See id. A content-based regulation of noncommercial speech is "presumptively

22  unconstitutional." *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998), as amended

   on denial of reh'g (July 29, 1998) (emphasis added). It can survive only if it is the least

**MOTION TO DISMISS**
Page 13
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

1

2

restrictive means to achieve a compelling government interest. See *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 797 (9th Cir. 2006).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

The automated call provision of the TCPA, 47 U.S.C. § 227(b)(1)(A), is precisely such a content-based regulation of noncommercial speech, because it "distinguish[es] favored speech from disfavored speech on the basis of the ideas or views expressed." Turner Broad. Sys. v. F.C.C., 512 U.S. 622, 643 (1994*). In Gomez v. Campbell-Ewald Co.,* 768 F.3d 871, 876 & n.3 (9th Cir. 2014), cert. granted (May 18, 2015), the Ninth Circuit assumed that the automated call provision of the TCPA was content-neutral because it does not distinguish between commercial and noncommercial speech—it regulates both. However, the Ninth Circuit observed that the defendant in that case had "not argue[d]" that exceptions to the automated call provision made it a content-based regulation, and the Ninth Circuit noted that like the junk-fax provision of the TCPA, 47 U.S.C. § 227(b)(1)(C), the automated call provision in fact has content-based exceptions. See id. (citing *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 56 (9th Cir. 1995), which held that the junk-fax provision is content-based). One such exception is for calls "made for emergency purposes," § 227(b)(1)(A)—which the FCC has ruled includes any calls made "in any situation affecting the health and safety of consumers," 47 C.F.R. § 64.1200(f)(4). This exception is content-based, because it "requires a court to "examine the content of the message that is conveyed to determine whether a [TCPA] violation has occurred." *McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (internal quotation marks omitted); see also *City of Cincinnati v. Discovery Network, Inc*., 507 U.S. 410, 429 (1993). Moreover, where an exception to a restriction on commercial speech is content-based, "the restriction itself is based on content." *Foti*, 146 F.3d at 636 (emphasis added); see also *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 820 (9th Cir. 1996) (finding content-based a sign ordinance that required examination of the content of signs to determine.

22

The Ninth Circuit had previously rejected the argument that the artificial pre-recorded message provision of the TCPA, 47 U.S.C. § 227(b)(1)(B), is content-based, but again it did so

**MOTION TO DISMISS**
Page 14
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

only on the ground that that provision does not "distinguish between commercial and noncommercial speech." *Moser v. FCC,* 46 F.3d 970, 973 (9th Cir. 1995). The parties in that case did not raise, and the Ninth Circuit has not addressed, whether an exception renders that provision content-based.

Not only is the automated call provision content-based, but it also is not "the least restrictive means to further a compelling interest," as applied to SERVE ALL, HELP ALL'S alleged conduct of placing phone calls. Foti, 146 F.3d at 637; see also *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 803 n.22 (1984) ("The fact that the ordinance is capable of valid applications does not necessarily mean that it is valid as applied to these litigants. We may not simply assume that the ordinance will always advance the asserted state interests sufficiently to justify its abridgment of expressive activity."). Even assuming for purposes of this motion a compelling or significant interest in privacy, see *Gomez,* 768 F.3d at 876, and that the TCPA furthers that interest when it imposes liability on companies that send spam text advertisements, see id. t 873, *Satterfield,* 569 F.3d at 949, imposing statutory damages on SERVE ALL, HELP ALL for calls offering services from a charitable organization does not. Imposing liability on SERVE ALL, HELP ALL providing charitable services would result in a chilling a wide range of constitutionally-protected communications. Cf. *Yniguez v. Arizonans for Official English*, 69 F.3d 920, 931 (9th Cir. 1995) ("[A] party may challenge a law as facially overbroad that would be unconstitutional as applied to him so long as it would also chill the speech of absent third parties."), vacated on other grounds sub nom. *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).

An equally effective and less restrictive alternative is readily apparent: exempting noncommercial calls offering assistance to those in need. Far from diminishing the interest in protecting consumer's privacy, this alternative advances it.

Given the First Amendment problems with Plaintiff's construction of the TCPA, and the fact that calls advance the government's interest in protecting consumer from unjust actions, this Court should construe the TCPA as not applying to the alleged calls either because

**MOTION TO DISMISS**
Page 15
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA  98273**
**206-242-5529**

1  the notifications fall within the emergency exception or because Plaintiff has not adequately

2  alleged the calls were placed using an ATDS. See *INS v. St. Cyr*, 533 U.S. 289, 299–300

3  (2001); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir. 2006) ("In construing

4  the applicable statutes, we are governed by the canon of constitutional avoidance, which

   requires a statute to be construed so as to avoid serious doubts as to the constitutionality of an

5  alternate construction.").

6                                         **CONCLUSION**

7          For all of the forgoing reasons this Court should grant SERVE ALL, HELP ALL'S

8  motion to dismiss under Rule 12(b)(6) with prejudice.

9
   Respectfully submitted this  30th  day of June, 2021

10
                                                    s/Donna Gibson_____
11                                                  Donna Gibson WSBA 33583
                                                    Attorney for Defendant
12                                                  SERVE ALL, HELP ALL INC.
                                                    Law Office of Donna Beasley Gibson
13                                                  1204 Cleveland Ave
                                                    Mount Vernon, WA  98273
14                                                  206-242-5529/Fax: 425-332-7068
                                                    beasleylaw@msn.com
15                                                  donna@donnagibsonlaw.com

16

17

18

19

20

21

22

**MOTION TO DISMISS**
Page  16
.3:21-cv-05338-BHS

1

2

CERTIFICATE OF SERVICE

3

I DECLARE that on June 30, 2021, I placed for delivery in the United States Mail, via first class mail, postage prepaid, a true and correct copy of the above MOTION TO DISMISS along with the PROPOSED ORDer to:

4

5

Nathen Barton
4618 NW 11th Cir
Camas, Wa 98607

6

7

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct, dated June 30, 2021, at Mount Vernon, Wa 98273

8

_____s/Donna Gibson_____

9

Donna Gibson WSBA 33583
Attorney for Defendant
SERVE ALL, HELP ALL INC.
Law Office of Donna Beasley Gibson
1204 Cleveland Ave
Mount Vernon, WA 98273
206-242-5529/Fax: 425-332-7068
beasleylaw@msn.com
donna@donnagibsonlaw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

**MOTION TO DISMISS**
Page 17
.3:21-cv-05338-BHS

**Law Office of Donna Beasley Gibson PLC**
**1204 Cleveland Avenue**
**Mount Vernon, WA 98273**
**206-242-5529**