1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Honorable Benjamin H. Settle



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

NATHEN BARTON,

Plaintiff

v.

SERVE ALL, HELP ALL., INC.; and
JOHN DOE 1-10,

Defendants.

3:21-cv-05338-BHS

CASE NO. 2:21-cv-05372

RESPONSE TO SERVE ALL, HELP
ALL'S MOTION TO DISMISS
ORGINAL COMPLAINT

COMES NOW Plaintiff Nathen Barton (hereinafter referred to as "Plaintiff") to respond

to SERVE ALL, HELP ALL., INC's. MOTION TO DISMISS THE ORGINAL COMPLAINT

("MTD") filed in this court on or about July 5, 2021.

**1. INTRODUCTION**

Out of the blue, Plaintiff received phone calls from a foreclosure prevention "charity"

that is actually in the mortgage solicitation-without-consent business.  This lawsuit ensued.

Defendant Serve All, Help All., Inc ("SAHA") appeared through counsel Donna Besley Gibson,

and filed a Motion to Dismiss ("MTD") on erroneous and confused grounds.  Plaintiff will

attempt to quickly identify the errors.

RESPONSE TO MOTION TO DISMISS ORGINAL COMPLAINT          - 1
CASE NO 3:21-CV-05338-BHS          NATHEN BARTON 4618 NW 11TH CIR CAMAS WA 98607

**Dispatching the Issues**

On page 2 of the MTD, SAHA lists a Statement of the Issues which has a high concentration of errors.

1.  "Plaintiff fails to plausible allege that the alleged telephone calls were sent with an . . . " (ATDS [automatic telephone dialing system] argument).  Plaintiff does not need to allege or prove an ATDS claim.  Plaintiff brings claims under TCPA 47 U.S.C. 227(b) which prohibits ". . . using any automatic telephone dialing system **or** an artificial or prerecorded voice . . ." (emphasis added).  Plaintiff has recordings to easily prove Defendant used an artificial or prerecorded voice on three separate calls to Plaintiff without consent and Plaintiff need not further prove the calls were also placed with an ATDS device.

2.  'Plaintiff fails to plausible allege that the alleged telephone calls where not "conducted to induce purchase of goods or services, or a charitable contribution, donation, or gift of money or any other thing of value" . . .'  Ignoring the non sequitur of SAHA's argument, Plaintiff attached Exhibits A and B to his complaints showing that SAHA asked for money and is in the business of selling mortgage services.

3.  "Plaintiff's Complaint fails to state a claim because it does not allege any plausible set of facts . . ."  First, it is not Plaintiff's burden to prove that SAHA is a charity and acted as charity when placing these calls to Plaintiff.  Second, being a charity is not a *get-out-of-jail-free* card for any and all telemarketing laws.  The only Plaintiff claim to which *being* a charity is a possible defense to the claims are the TCPA 47 U.S.C. 227(c)(5) claims.  All other laws claimed focus on the *acts* alleged, and not on the nature of the entity that conducted them.  And claiming the calls fall under the 'emergency' exemption is laughable.

4. "The First Amendment prohibits restricting the alleged calls because . . ." (non-commercial argument).  SAHA seems to have overlooked Exhibit B, which they sent to Plaintiff.  Freedom of speech does not mean freedom for SAHA to call anyone to want for any purpose any more than a 'charity' can ignore noise ordinances or trespass onto private property so they can engage in "freedom of speech".

### A few highlights

Most of SAHA's MTD is irrelevant, but Plaintiff does not want to risk ignoring the obvious to be taken as a stipulation.

### The alleged calls are clearly commercial in nature

SAHA called Plaintiff, and within a few minutes of SAHA completing the sales pitch, they followed up with an email (attached Exhibit A) and attached to Exhibit A was Exhibit B, soliciting funds and a mortgage application.  Exhibit A made clear that Exhibit B was a needed document.

$29-$62 immediately goes into SAHA's pockets as part of the sales process.

Plaintiff's burden on this topic to survive a 12(b)(6) MTD is low: "to state a cause of action under the TCPA, 'a plaintiff must allege that (1) a call was made; (2) the caller used an [artificial or prerecorded voice] . . . ; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express written consent of the recipient. *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 U.S. Dist. LEXIS 175642, at *5 (E.D. Pa. Dec 19 2016)".

### SAHA attempts to mislead the Court about § 227(b)(1)(A)

On Page 5, starting at line 7, SAHA writes:

"unlawful … to make any call (*other than a call made for emergency purposes* or made with the prior express consent of the called party) using any *automatic telephone dialing system* . . . to any telephone number assigned to a … cellular telephone service".

The deception is in the relevant portion left out.  This portion of the law should have read:

> "unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system *or an artificial or prerecorded voice* . . . to any telephone number assigned to a … cellular telephone service". (emphasis added)

Plaintiff alleged to have received three phone calls from SAHA that utilized an artificial or prerecorded voice.  Plaintiff does allege three ATDS claims, but need not prove them because he alleges three artificial or prerecorded voice claims which are easier to prove.  A complete and accurate recording of the first call can be heard at https://youtu.be/b4ZBxSyDvdg.  The call clearly starts out with an artificial or prerecorded voice.

## SAHA is not placing "Emergency" calls

SAHA attempts to paint themselves as in the business of placing "emergency" calls to prevent mortgage foreclosures like how a utility company might alert their own customers to service outages.  This should fail for several reasons.  First, while a utility company may be able to call or text their own customers to warn of an outage, they would not be allowed to tack on a sales message at the end of the public service announcement portion and still fall under the "emergency" exception.

Second, a mortgage foreclosure might be disruptive, but is not the 'emergency' that the FCC envisioned when carving out this TCPA exception.  Indeed, mortgage foreclosures are a slow-moving legal process overseen by layers of government agencies, the Washington State Legislature, and Congress.

1    Otherwise, life is full of inconvenient things and an "emergency" exception for every

2  inconvenience would have the local 7-11 robocalling Plaintiff to let him know "Unpleasant heat

3  wave coming tomorrow – come on down for a discount slurpy!"

4    It seems the FCC saw SAHA's self-serving arguments coming, because in a March 20,

5  2020 Declaratory Ruling, they said:

6    "In determining whether a call relating to the COVID-19 pandemic qualifies as a call
       made for an emergency purpose, we look to the identity of the caller and content of the
7      call. First, the caller must be from a hospital, or be a health care provider, state or local
       health official, or other government official as well as a person under the express
8      direction of such an organization and acting on its behalf. Second, the content of the call
       must be solely informational, made necessary because of the COVID-19 outbreak, and
9      directly related to the imminent health or safety risk arising out of the COVID-19
10     outbreak."

11    The FCC goes on to provide specific, but expressly non-exclusive, examples of permitted

12  calls by hospitals, health care providers, and government (or persons "under the express direction

13  of [any aforementioned] organization and acting on its behalf"):

14    Hospitals: "[A] call originating from a hospital that provides vital and time-sensitive
       health and safety information that citizens welcome, expect, and rely upon to make
15     decisions to slow the spread of the COVID-19 disease would fall squarely within an
16     emergency purpose."

17    Health Care Providers: "An informational call designed to inform and update the public
       regarding measures to address the current pandemic made on behalf of, and at the express
18     direction of, a health care provider would be made in a situation that 'affect[s] the health
       and safety of consumers" and would thus be exempt.'"
19
20    State or Local Official or Other Government Official: "[A] call made by a county official
       to inform citizens of shelter-in-place requirements, quarantines, medically administered
21     testing information, or school closures necessitated by the national emergency would be
       made for an emergency purpose as such measures are designed to inhibit the spread of
22     the disease."

23    The FCC also re-affirmed prior rulings that "calls that contain advertising or

24  telemarketing of services do not constitute calls made for an 'emergency purpose[.]'" Examples

1   provided by the FCC include "advertising a commercial grocery delivery service, or selling or

2   promoting health insurance, cleaning services, or home test kits."

3          While this FCC ruling specifically addressed COVID19, an actual health emergency, the

4   point is that SAHA is not free to start robocalling the public because someone, somewhere,

5   might be unaware of available resources.

6                          **Yes, the TCPA and First Amendment do Coexist**

7          On page 13, line 5, SAHA says "Imposing liability on SERVE ALL, HELP ALL for

8   sending non-commercial, charity funded services offered at no cost to the recipient". Then why

9   does Exhibit B ask for $29-$62 if the "charity funded services [are] offered at no cost to the

10  recipient"?

11         SAHA keeps saying FREE FREE FREE, somehow ignoring that they immediately ask

12  their clients for money.  SAHA may (or may not) be a "charity" but they are still asking for

13  money.  A mortgage application is not non-commercial speech.

14         On July 6, 2020, the Supreme Court issued a decision in *Barr v. American Association of*

15  *Political Consultants Inc.* ("AAPC") that provides insight into the Supreme Court's views of the

16  TCPA and regulation of commercial speech. The TCPA was adjusted slightly and then found to

17  pass constitutional muster.

18         Plaintiff finds it unlikely that this Court will overturn the TCPA, a 30 year old law, on

19  first amendment grounds so that SAHA can continue to hawk mortgages.

20                                      **Conclusion**

21         SAHA writes starting on MTD page 15, line 22:

22         "this Court should construe the TCPA as not applying to the alleged calls either because
           the notifications call within the emergency exception or because Plaintiff has not
23         adequately alleged the calls were placed using an ATDS.

24

1    SAHA's ATDS arguments fail because of the "or an artificial or prerecorded voice"

2  language in TCPA 47 U.S.C. 227(b) that SAHA conveniently failed to notice.

3    SAHA's "emergency" exception fails because what SAHA seeks to prevent is not the

4  FCC's definition of emergency, SAHA isn't a government or private critical infrastructure

5  provider, and SAHA is selling products and services, not running public service announcements.

6    SAHA's motion should be denied.

7
DATED: July 6, 2021
8                                       _____
                                         Nathen Barton
9                                        4618 NW 11th Cir
                                         Camas WA 98607
10                                       FarmersBranch2014@gmail.com

11

12

13                        **CERTIFICATE OF SERVICE**

14    I certify that by this 6th day of July, 2021, a copy of the foregoing document was served

15  on Defense Counsel Donna Gibson via email.

16

17

18

19

20

21

22

23

24

RESPONSE TO MOTION TO DISMISS ORGINAL COMPLAINT           - 7
CASE NO 3:21-CV-05338-BHS            NATHEN BARTON 4618 NW 11TH CIR CAMAS WA 98607

 Gmail

N B <farmersbranch2014@gmail.com>

# New Client Intake Packet

Carlos Cotta <ccotta@nacalaw.org>
To: "farmersbranch2014@gmail.com" <farmersbranch2014@gmail.com>
Cc: Ricardo Porcayo <rporcayo@nacalaw.org>

Wed, Feb 17, 2021 at 1:08 PM

Good afternoon Mr. Barton. Here is the list of documents we are going to need from you.
Documents needed:

- Most recent mortgage statement from your lender
- 1 month of pay stubs/most recent pension statement/2020 social security awards letter
- 3 months of bank statements (all pages)
- 2018 and 2019 tax returns w/ W2s
- 1 recent utility bill (gas, electric or water)
- Hardship Letter (explaining what caused you to fall behind)
- Sign all pages on the Free Services Agreement that needs your signature after page 8
- Credit Report Authorization Form (fill out all 3 pages)
- RMA Form (please fill out pages and sign pages 5 & 6)
- 4506-T Form (please fill out, sign and date)
- Emergency Covid-19 Forbearance Form
- Missing Document Acknowledgement Form (sign and date) just in case you are missing any documents please sign it, so it can be ok to submit your file without this (these) documents.

Respectfully,

*Carlos M. Cotta*

**Carlos M. Cotta**

**DRE Lic:** *02082207*
**CA Real Estate Agent/Volunteer Advocate**

**Address:** *1503 South Coast Dr. Suite 100*
*Costa Mesa, CA 92626*
**Direct:** *949.430.0475*
**Office:** *877.243.4632*

**Fax: 949.502.0819**
www.nacalaw.org



NONPROFIT ALLIANCE

# Exhibit A – Page 2

NOTICE OF CONFIDENTIALITY: This Email message and its attachments (if any) are intended solely for the use of the addressees hereof. In addition, this message and the attachments (if any) may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify us and immediately delete this message from your system.

## 5 attachments

📄 **4506-T Form (1).pdf**
95K

📄 **Credit Report Authorization Form (1).pdf**
646K

📄 **Emergency Covid-19 Forbearance Request.pdf**
276K

📄 **Missing Documents Acknowledgement Form.pdf**
208K

📄 **Mortgage_Assistance_Application_Bank-of-America (1).pdf**
1012K

## Exhibit B - Page 1



NONPROFIT ALLIANCE
*of ...*

# CREDIT CARD and CREDIT REPORT AUTHORIZATION FORM

*PLEASE PRINT OUT AND COMPLETE THIS AUTHORIZATION FORM
AND RETURN IT TO OUR OFFICE. (SIGN BELOW)*

☐ CARD HOLDER AND APPLICANT ARE NOT THE SAME.

"I [＿＿＿＿＿＿＿＿＿＿]. hereby Authorize Vision One and or
any of its Affiliates my expressed authorization to run a credit report.

**NAME:**

**CARDHOLDER NAME:**

**ADDRESS:**

Card type:

VISA        MasterCard

**CREDIT CARD NUMBER**

**EXPIRATION DATE:**

**BILLING ZIP CODE:**

**CARD IDENTIFICATION NUMBER:** [＿＿]    (last 3 digits)

Credit Pull:  $29.00 (Single) AMOUNT CHARGED:  0    $
(Married Couples Only) $50.00 (Double) AMOUNT CHARGED:  0    $
Rapid Response add $12.00 per Person:  0    $

OTHER                                    $
                    TOTAL :             $

**SIGNATURE:**

# Exhibit B - Page 2

## Borrower Signature Authorization

Privacy Act Notice: This information is to be used by the agency collecting it or its assignee in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et. seq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et seq., or 7 USC, 1921 et. seq. (if USDA/FmHA).

### Part I - General Information

| 1. Borrower(s) | 2. Name and address of Lender/Broker |
|---|---|
|  | Faith First Bancorp Inc |
|  | 1503 South Coast Drive, Suite 100 |
|  | Costa Mesa, California 92626 |
|  | Tel: 949-416-0168 Fax: 949-269-2079 |

| 3. Date | 4. Loan Number | |
|---|---|---|

### Part II - Borrower Authorization

I hereby authorize the Lender/Broker to verify my past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process my mortgage loan application. I further authorize the Lender/Broker to order a consumer credit report and verify other credit information, including past and present mortgage and landlord references. It is understood that a copy of this form will also serve as authorization.

The information the Lender/Broker obtains is only to be used in the processing of my application for a mortgage loan.

_____         _____
Borrower                             Date

_____         _____
Borrower                             Date

CALYX Form Bsa.hp 10/98

# Exhibit B - Page 3

## Borrower's Certification & Authorization

### Certification

The undersigned certify the following:

1.  I/We have applied for a mortgage loan from BAY VALLEY MORTGAGE GROUP.

    In applying for the loan.

    I/We completed a loan application containing various information on the purposes of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application with the employer and/or other documents, nor did I/We omit any pertinent information.

2.  I/We understand and agree that BAY VALLEY MORTGAGE GROUP reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/the financial institution.

3.  I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### Authorization to Release Information

To Whom It May Concern:

1.  I/We have applied for a mortgage loan from BAY VALLEY MORTGAGE GROUP.

    As part of the application process, BAY VALLEY MORTGAGE GROUP may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2.  I/We understand and agree that BAY VALLEY MORTGAGE GROUP reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3.  BAY VALLEY MORTGAGE GROUP or any investor that purchases the mortgage may address this authorization to any party names in the loan application.

4.  A copy of this authorization may be accepted as an original.

5.  Your prompt reply to BAY VALLEY MORTGAGE GROUP or the investor that purchased the mortgage is appreciated.

_____   Date

_____   Date

Social Security Number:                    Social Security Number:

Borrower's Certification & Authorization 07/2011 ~ Encompass360



US POSTAGE & FEES PAID
5 OZ FIRST-CLASS PARCEL RATE
ZONE 2 NO SURCHARGE
ComBasPrice

06250012564532
7743568
FROM 98607

stamps
endicia
07/06/2021

## USPS FIRST-CLASS PKG™

SHIP
TO:

US DISTRICT COURT
1717 PACIFIC AVE
TACOMA WA 98402-3234

FILED _____ LODGED
RECEIVED

JUL 08 2021

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
DEPUTY

USPS TRACKING #

9400 1111 0829 6516 7234 55