Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Nathen Barton,<br><br>Plaintiff<br>v.<br>Serve All, Help All, Inc.<br><br>and<br><br>John Doe 1-10<br><br>Defendant(s). | Case No.: 3:21-CV-05338-BHS<br><br>MOTION FOR RULE 11 SANCTIONS<br><br>NOTE ON MOTION CALENDAR: MAY 13, 2022 |

PLEASE TAKE NOTICE that Plaintiff Nathen Barton ("Plaintiff") moves the Court to for Rule 11 sanctions against defendant Serve All, Help All, Inc. ("SAHA") and Opposing Counsel.

**I.      INTRODUCTION**

On May 7, 2021, Plaintiff filed an action captioned Nathen Barton v. Serve All, Help All, Inc. ("SAHA"). et al, in the United States District Court, Western District of Washington with cause number 3:21-cv-05338-BHS.

On July 23, 2021 Plaintiff propounded **INTERROGATORY #4** on SAHA (shown below with their answer). Defendants have not supplemented Interrogatory #4 as of 4/6/2022.

> **INTERROGATORY NO. 4:** Set forth every fact supporting in whole or in part any affirmative defense you intend to raise in this litigation.
>
> **ANSWER:**
>
> Discovery has just begun and Serve All, Help All Inc. has just begun its investigation and will supplement its response when appropriate information has been received.
>
> Plaintiff has correspondence from Plaintiff that is produced herewith stating his mission and admitting that he engaged defendants.

SAHA filed their Original Answer (Dkt. 21) on September 8, 2021, asserting <u>affirmative defenses of Unclean Hands and Fraud</u>, without filing a counter-claim. *Id* at 3:13, 3:15.

Defendants have not supplemented Interrogatory #4 as of 3/31/2022.

Then on February 24, 2022, just 39 days before all motions related to discovery must be filed, SAHA, without leave of the Court filed a Counterclaim for Fraud (Dkt. 46).

Dkt. 46 alleges Plaintiff "opted in" to a marketing campaign (*Id* at paragraph 3.1) on a website (*Id* at paragraph 3.4) and SAHA had the IP address of the "opt in" (*Id* at paragraph 3.1):

Then on March 23rd, 2022, Opposing Counsel admitted that SAHA purchased a Mr. Wilder's information "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed". See the email on the next page.

<u>There was no website.</u>  The phone number in question was scraped from public records.

<u>There was no "opt in".</u>  The phone number in question was scraped from public records.

## II.    PLAINTIFF HAS ZERO CONNECTION TO AN "OPT IN"

Unless SAHA contends that Plaintiff purchased a home under a fake name (Mr. Wilder), then went into default to attract SAHA's calls (which wouldn't be fraud – SAHA still doesn't have the express written consent to robocall phone numbers scraped from public records) then Plaintiff has zero connection to SAHA prior their first robocall to his phone number.

SAHA admits

"the phone number . . . that you were called on played a message personalized for Mr. Wilder as that phone number was associated with the property in question"

SAHA's Dkt. 46 was more than meritless, it was filed with the court with no basis in fact. If SAHA didn't know it wasn't true, they certainly didn't know that it was true. SAHA admits that it was only after Plaintiff's discovery requests that they conducted a review of their own information:

> "The defendant in this case has been diligently searching its computer files for information regarding this case and the onslaught of discovery that has come from the plaintiff. It was recently discovered that the phone number which SAHA believes is the number at issue in this lawsuit was not obtained as defendant first thought, but through another means." Dkt. 57, 2:10-15. Underlining added.

SAHA's email on the subject ("March 23 Email") is below.

### *March 23 Email*

**DONNA GIBSON** <donna@donnagibsonlaw.com>
To: Nathen Barton <farmersbranch2014@gmail.com>
Wed, Mar 23, 2022 at 9:45 AM

COMMUNICATION PURSUANT TO ER 408

My client is attempting to provide me with electronic information that would change our answer in this matter.

The short version is:

It appears, and I am having them confirm, that Mr. Wilder's information was purchased through company that gathers public record information when Notices of Default and Notices of Trustee Sales are filed. And then SAHA purchases leads from that company. Mr. Wilder's property was in foreclosure and the phone number (I forget which one at the moment) that you were called on played a message personalized for Mr. Wilder as that phone number was associated with the property in question. Then at some point you interacted with the message and then interacted with someone at SAHA.

This would change our Answer and our defenses. I am drafting a motion to amend Answer.

I know that you wanted to amend your complaint to remove some allegations.

Perhaps we could stipulate to you filing an amended complaint and then us filing an answer to that which would be third amended complaint with an answer which would be along these lines.

--
Donna Gibson
Law Office of Donna Beasley Gibson

206-242-5529 phone
425-332-7068 fax

**ER 408 does not prevent admissibility of the email**

1    The top of the March 23'rd email does say COMMUNICATION PURSUANT TO ER

2 408 but adding a disclaimer to an email does not trigger the rule.  Complying with ER 408

3 triggers the rule.

4    ER 408 says (in relevant part)

5    (a)    Prohibited Uses. Evidence of the following is not admissible — on behalf of any
            party — either to prove or disprove the validity . . . of a disputed claim . . .:
6
     2)     conduct or a statement made during <u>compromise negotiations about the claim</u> . . .
7
     (b)    Exceptions. The court may admit this evidence for another purpose, such as
8           proving a witness's bias or prejudice, negating a contention of undue delay, or
            proving an effort to obstruct a criminal investigation or prosecution.
9

10   This email is admissible because it wasn't made during compromise negotiations about a

11 claim.  Gibson sent The Email as an announcement that "I am drafting a motion to amend

12 Answer".  Nothing in The Email negotiates a claim – Gibson never offers Plaintiff anything to

13 resolve any claim.

14   Gibson starts out with information, announces what she is going to do, and then simply

15 proposes how the plan can be presented to the Court.

16   ER 408 is clear, and no "compromise negotiations about the claim" triggered it.

17              **A Second Email Shows the Counterclaim is based on Speculation**

18   A March 30 email from Opposing Counsel shows Dkt. 46 was based on speculation

19 (email is on the next page).

20   J.P. De La Vega "may have" speculated that Plaintiff "opted in" on one of SAHA's 30+

21 "Sue-your-lender" website landing pages and Opposing Counsel filed a lawsuit on that

22 conjecture.

23

24

*March 30 Email from J.P. De La Vega*

> **SAHA**
>
> DONNA GIBSON <donna@donnagibsonlaw.com>                    Wed, Mar 30, 2022 at 9:41 AM
> To: Nathen Barton <farmersbranch2014@gmail.com>
>
> This is a summary of the information that I received through my client and their IT person:
>
> From J. P. De La Vega
>
> ==I don't think I ever stated that he opted in on a web-site.. I may have indicated that he may-have opted in as we have no less than 30 'Sue-your-lender' website landing pages== … I indicated he also could have originally called on a TV commercial… but what I did state that wa s fact.. ==He Opted in on a Outboud Call intended to a different person== who was attached to a specific Mobile # and or address that was in default… our system would have called this persons 'old' number and he heard a message stating that persons name and that persons property address…(he knowing it wasn't him) and the system gave the recipient an option to a) not accept the call and be removed from the list by pressing # 2 on their Phone or b) accept the call and be transferred to a live Volunteer advocate by pressing # 8 on his Phone. ==So by not opting out and by pressing # 8 on his Phone he opted in== and was transferred to our Volunteer staff member where Barton proceeded to pretend he was someone else.

### SAHA Concedes to Plaintiff

Opposing Counsel ultimately responded (Dkt. 49) to Plaintiff's motion to strike (Dkt. 48) and SAHA "AGREES to dismiss its counterclaim as filed".

### Before moving to file ANOTHER Frivolous Counterclaim

A quick primer on dates:

| | |
|---|---|
| May 7, 2021 | Action filed |
| June 9, 2021 | SAHA is served |
| July 23, 2021 | Plaintiff propounds INTERROGATORY #4 |
| September 8, 2021 | SAHA answers asserting affirmative defenses of Unclean Hands and Fraud, without filing a counter-claim |
| February 24, 2022 | SAHA files first counterclaim alleging Plaintiff "opted in" from some website. |
| March 23, 2022 | SAHA admits in an email that they obtained Plaintiff's phone number "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed" |

| | | |
|---|---|---|
| 1 | March 30, 2022 | SAHA admits the counterclaim was based on J.P De La Vega's speculation that Plaintiff may have "opted in" on one of SAHA's 30+ "Sue-your-lender" website landing pages. |
| 3 | April 1, 2022 | SAHA agrees to dismiss Dkt. 46 |
| 4 | April 5, 2022 | SAHA asks the Court for permission to **again** file a counterclaim alleging Plaintiff "opted in" on a **website** (Dkt. 56-2, 10:3-6) while already knowing on March 23 that they obtained Plaintiff's phone number "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed" |

Opposing Counsel herself testifies in support of her March 23 email: "Essentially, they believe the phone number in question was purchased from a marketing company who provides leads regarding people facing foreclosure, and that the number was, at the time of receipt, assigned to someone other than Mr. Barton." Dkt. 57, 2:21-23

But, their proposed counterclaim, SAHA says the opposite: "SAHA is informed and believes and thereon alleges that BARTON represented himself using a false name when he opted-in and to represent to the court in his lawsuit that he had never opted in to receive information" in front of the court while privately knowing that they obtained Plaintiff's phone number "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed"

**SAHA is Motivated by Bad Faith**

SAHA feels wronged because they called Plaintiff's cell number looking for Mr. Wilder and Plaintiff didn't "opt out" from the calls. The following is a portion of an email from Opposing Counsel. (Red arrow, Highlighting added by Plaintiff).

> **SAHA**
>
> DONNA GIBSON <donna@donnagibsonlaw.com>                                  Wed, Mar 30, 2022 at 9:41 AM
> To: Nathen Barton <farmersbranch2014@gmail.com>
>
> This is a summary of the information that I received through my client and their IT person:
>
> From J. P. De La Vega
>
> I don't think I ever stated that he opted in on a web-site.. I may have indicated that he may-have opted in as we have no less than 30 'Sue-your-lender' website landing pages … I indicated he also could have originally called on a TV commercial… but what I did state that wa s fact.. He Opted in on a Outboud Call intended to a different person who was attached to a specific Mobile # and or address that was in default… our system would have called this persons 'old' number and he heard a message stating that persons name and that persons property address…(he knowing it wasn't him) and the system gave the recipient an option to a) not accept the call and be removed from the list by pressing # 2 on their Phone or  b) accept the call and be transferred to a live Volunteer advocate by pressing # 8 on his Phone. So by not opting out and by pressing # 8 on his Phone he opted in and was transferred to our Volunteer staff member where Barton proceeded to pretend he was someone else.

And while they admit they obtained Plaintiff's number "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed" they allege that Plaintiff not "opting out" during their illegal phone call is fraud:

> Upon receiving the auto-dialed phone call, rather than hanging up or selecting the option to remove his number BARTON opted to contact SAHA. Dkt. 56-2, 10:11-12).
>
> BARTON made no attempt to inform SAHA that the number was not associated with the person asked for in the phone call.  Dkt. 56-2, 10:16-17).

It is SAHA's position that regardless of SAHA's illegal robocall to Plaintiff, anything but "opting out" is fraud.  Opposing Counsel accused Plaintiff of fraud by choosing to speak with a live Volunteer:

> ". . . on the topic of a lawsuit based completely on "fraud"
>
> you HEARD the recording state someone else's name and rather than opt out because they were seeking someone else YOU CHOSE TO INTERACT WITH THEM".

*March 29 Email from Opposing Counsel*

> **SAHA**
>
> **DONNA GIBSON** <donna@donnagibsonlaw.com>     Tue, Mar 29, 2022 at 1:51 PM
> To: Nathen Barton <farmersbranch2014@gmail.com>
>
> And on the topic of a lawsuit based completely on "fraud"
>
> YOU INTEREACTED WITH THEM.  And apparently you HEARD the recording state someone else's name and rather than opt out because they were seeeking someone else YOU CHOSE TO INTERACT WITH THEM
> How is that not bad faith, in the least, on your part.
> AND YOU file multiple lawuist with the intent that parties will merely "roll over" and pay you to "make you go away"?
> YOU sir, should look in the mirror.

By "INTERACT WITH THEM" Gibson means when Plaintiff stayed on the line and spoke to a SAHA representative after the initial robocall portion of the call to identify who was illegally robocalling him.  Which was necessary to identify SAHA.

SAHA provided this transcript of the robocalls in the bottom of the March 30 Email.

According to their own call transcript the pre-recorded or artificial speech portion of the call never identifies who is calling.  This violates § 47 C.F.R 64.1200(b).

*Bottom of the March 30 Email from Defense Counsel – Transcript of the Robocall*

> 3/30/22, 9:52 AM                                                     Gmail - SAHA
>
> **Press 1 Message**
>
> ATTENTION {first_name} {last_name} at {Street}. This is a Public Service Announcement for Homeowners in DEFAULT. The Federal Governments temporary ban on foreclosures has been lifted, the Sale Date on {SaleDate} is being reset, you must act now. The National Mortgage Payment Relief plan can officially relieve you of making Mortgage Payments all together for up to 12 months, and you may also be eligible to pay off debt and get cash reserves until this Covid crisis is over. A Not for Profit Clinic has been set up to help check your eligibility for FREE by Pressing 0 on your phone right now. The Federal Reserves dropped the rate to ZERO and just approved TWO TRILLION dollars to shelter the economy from the effects of this virus. A Nonprofit 501 C3 has been set up to help you apply for FREE simply Press 0 or call 844-622-2243 That is 844-NACA-AID.

This transcript of phone calls from SAHA to Plaintiff, provided by SAHA, admits they violated the regulations governing the TCPA, 47 C.F.R

§ 64.1200(a)(1)(iii) – initiating a telephone call using artificial or prerecorded voice to any telephone number assigned to . . . cellular telephone service . . .

§ 64.1200(b) – At the beginning of the messages, SAHA did not state clearly the identity of the business, individual, or other entity that was responsible for initiating the call.

Opposing Counsel characterizes Plaintiff not "opting out" of robocalls that Plaintiff didn't opt into and then suing 'a lawsuit based completely on "fraud"'.

This is completely against well settled law in the ninth circuit.

"The principal question in this case is whether Credit One can escape liability under the TCPA because the party it intended to call (its customer) had given consent to be called, even though the party it actually called had not. Consistent with every circuit to have addressed this issue, we hold that this argument fails under the TCPA's text, most naturally read. Credit One is therefore liable under the TCPA for its calls to N.L. We affirm the district court in this and all respects." *N. L. v. Credit One Bank*, 960 F.3d 1164, 1166 (9th Cir. 2020).

SAHA has even less going for them than Credit One Bank – Credit One Bank was at least intending to call a consumer with whom they had an established business relationship. SAHA has admitted they robocalled a phone number they found in public records without express written consent and that is a violation of TCPA 47 U.S.C. 227(b) on every single such call.

SAHA has found themselves in an unenviable position – legally in the wrong, blaming Plaintiff for their legal woes, and nearly out of time to pull a rabbit out of a hat.

They concocted a plan. SAHA was served this lawsuit on 6/9/2021 and SAHA counterclaimed (the first time) on 2/24/2022, 260 days later.

They certainly had plenty of time to know they purchased Mr. Wilder's contact information from a middleman, but obviously they did not know where that information came from when they filed their initial counterclaim.

> DONNA GIBSON <donna@donnagibsonlaw.com>                    Wed, Mar 23, 2022 at 9:45 AM
> To: Nathen Barton <farmersbranch2014@gmail.com>
>
> COMMUNICATION PURSUANT TO ER 408
>
> My client is attempting to provide me with electronic information that would change our answer in this matter.
>
> The short version is:
>
> It appears, and I am having them confirm, that Mr. Wilder's information was purchased through company that gathers public record information when Notices of Default and Notices of Trustee Sales are filed. And then SAHA purchases leads from that company. Mr. Wilder's property was in foreclosure and the phone number (I forget which one at the moment) that you were called on played a message personalized for Mr. Wilder as that phone number was associated with the property in question. Then at some point you interacted with the message and then interacted with someone at SAHA.
>
> This would change our Answer and our defenses. I am drafting a motion to amend Answer.
>
> I know that you wanted to amend your complaint to remove some allegations.
>
> Perhaps we could stipulate to you filing an amended complaint and then us filing an answer to that which would be third amended complaint with an answer which would be along these lines.
>
> --
> Donna Gibson
> Law Office of Donna Beasley Gibson
>
> 206-242-5529 phone
> 425-332-7068 fax

Then they learned they obtained Plaintiff's number "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed" so they agreed to dismiss Dkt. 46 but they then filed Dkt 56 still making representations to this Court that Plaintiff "opted in" while outside of court J.P. De La Vega said "I don't think I ever stated that he opted in on a web-site .. I may have indicated that he may-have opted in". (from the March 30 email).

Opposing Counsel filed a counterclaim and is now asking to file another on that conjecture.

Due to Opposing Counsel's experience in *Barton v. Delfgauw*, 3:21-cv-05610-JRC, she knows it is easy to allege that an "opt in" came from a website and difficult for a counter-defendant to prove they were not the source of it.

1   All of the facts around this counterclaim including its extreme delay suggest bad faith

2   "Bad faith may be shown when a party seeks to amend late in the litigation process with claims

3   which were, or should have been, apparent early." *Mendia v. Garcia*[1], 165 F.Supp.3d 861, 873

4   (N.D. Cal. 2016) (citing *Bonin v. Calderon*[2], 59 F.3d 815, 846 (9 Cir. 1995).

5   Opposing Counsel has admitted that it was only in response to Plaintiff's discovery

6   requests that they even bothered to diligently search their on computer files:

> "The defendant in this case has been diligently searching its computer files for information regarding this case and the onslaught of discovery that has come from the plaintiff. It was recently discovered that the phone number which SAHA believes is the number at issue in this lawsuit was not obtained as defendant first thought, but through another means." Dkt. 57, 2:10-15. Emphasis added.

What this means is as they filed their first counterclaim in Dkt. 46 on February 24, 2022, they had no idea where the phone number at issue came from. And when they had to respond to counter-defendant Barton's discovery requests post-Dkt. 46, within a few weeks Opposing Counsel was admitting in the March 23 email that there was no website and there was no "opt in".

Had SAHA not ignored Interrogatory #4, they would have found all this information six months earlier.

When Opposing Counsel signed Dkt. 46, and as she files Dkt. 56-2, she certified to the Court that to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[1] https://casetext.com/case/mendia-v-garcia-10

[2] https://casetext.com/case/bonin-v-calderon

MOTION RULE 11    - 11 / 14    NATHEN BARTON
CASE 3:21-CV-05338-BHS            4618 NW 11TH CIR
                                  CAMAS WA 98607

2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Dkt. 46 and Dkt. 56-2 clearly fails 2, 3), and 4). Filing a counterclaim because J.P De La Vega speculated the "opt in" could have been through a website is not information formed after a reasonable inquiry.

They persist despite clearly knowing SAHA obtained Plaintiff's phone number from public records.

Their own email communication shows their counterclaim is at minimum meritless and even with ninth months or of ongoing litigation Opposing Counsel put forth a counterclaim contrary to well established law in the 9th circuit.

It can be reasonably inferred that they filed the counterclaim to harass Plaintiff.

### III.   CONCLUSION

Opposing Counsel and SAHA know the basis of their proposed counterclaim in Dkt 56-2 is meritless. They have admitted that they obtained Plaintiff's number "through company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed".

<u>Opposing Counsel herself testifies to the same: "Essentially, they believe the phone number in question was purchased from a marketing company who provides leads regarding people facing foreclosure, and that the number was, at the time of receipt, assigned to someone other than Mr. Barton." Dkt. 57, 2:21-23.</u>

But in paragraph 3.7 of Dkt 56-2, they tell the Court "SAHA is informed and believe and thereon allege that Counterdefendant NATHEN BARTON provided a fake name when he provided his phone number on the website when opting in to receive information."

SAHA and Opposing Counsel seek to deceive the Court.

Opposing Counsel and SAHA should be sanctioned for their misconduct and to deter similar conduct by others similarly situated.  It is only by Defendant's bad luck that there isn't an "opt in" in play at all.  It will waste the Courts time to deal with a counterclaim based on a fraud.

Gibson and SAHA should be sanctioned harshly to deter other telemarketers from simply asserting a counterclaim to scare off pro-se plaintiffs.

Courts should strongly discourage claims based on "it might be possible" as it is very difficult for a pro-se plaintiff to prove he or she wasn't connected to some random IP address.

| __/s Nathen Barton___ | ____4/26/2022_____ |
|---|---|
| Nathen Barton | Dated |

Nathen Barton
(469) 347 2139
4618 NW 11th Cir
Camas WA 98607
bluewind33@protonmail.com

### IV.   CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF System, which will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF System, which includes the Defendant.  The said Notice of Electronic Filing specifically identifies recipients of electronic notice.

1  Executed on April 27, 2022.

2  /s/ Nathen Barton

   Nathen Barton