1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHEN BARTON,<br><br>                    Plaintiff<br><br>     v.<br><br>SERVE ALL, HELP ALL, INC.; and<br>JOHN DOE 1-10,<br>                    Defendants. | CASE NO. 3:21-cv-05338-BHS<br><br>PLAINTIFF'S RESPONSE TO<br>SAHA'S CROSS MOTION FOR<br>SUMMARY JUDGEMENT<br><br>CROSS MOTION NOTED FOR:<br>AUGUST 5, 2022 |

## I.     MOTIONS TO STRIKE & LEAVE TO ENLARGE REPLY

The cross motion for summary judgment should be struck as untimely.  Dkt. 18 says all dispositive motions should have been filed by June 1, 2022 and Dkt. 87 was filed on 7/11/2022.

Should the Court still consider Dkt. 87, Plaintiff moves to strike ¶3, ¶4, ¶6, and Exhibit 1 and Exhibit 2 of the declaration of Donna Gibson ("OC"). Plaintiff also moves to strike portions of Defendant's Cross Motion (Dkt. 87). Plaintiff further requests, and will move via separate motion, the enlargement of the 12-page reply brief limitation as prescribed by LCR 7(e)(3) as LCR 7(g) requires motions to strike to be included in responsive briefs.

### Donna Gibson's Declaration

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

OC testifies about TCPA University in ¶3 of her declaration.

Plaintiff has testified in the attached Exhibit A that he did not publish any content on the TCPA University website, nor ask for any content to be published on the TCPA University website, and further he asked that it be taken down.  Diana Bartolme ("Bartolme") has testified in the attached Exhibit B that she created the website as well as all the content on the website to use as a marketing tool for her own efforts.

SAHA had ample opportunities to ask Bartolme questions about TCPA University and they declined to do so.  ¶3 of OC's declaration should be struck has hearsay.

OC testifies in ¶4 of her declaration about Plaintiff's alleged Facebook page and purports to show "documents" from Plaintiff's Facebook page in Exhibit 2.  OC has not authenticated these documents, nor could she because the documents in Exhibit 2 have "TCPA University" written on them.

Plaintiff has testified (¶4 of his declaration) he never posted anything about "TCPA University" on his Facebook page.  These documents are not from Plaintiff's Facebook page.

OC cannot "prove up" the source of these Exhibit 2 and they are inadmissible.

Similarly, Plaintiff checked "Reviews given" on his Facebook page and "Correoschile" is not shown as a review Plaintiff has ever given (¶5, ¶6 of his declaration).  A Google search and a Facebook search of "Correoschile" or "Correoschile cell phone" do not turn up anything.  "Correoschile" appears to be fake and Exhibit 2 has no connection to Plaintiff.

Exhibit 4 is not connected to Plaintiff and OC did not demonstrate why this is admissible.

### Striking Portions of Dkt. 87

Dkt. 87, 2:12-18 should be struck.  Plaintiff has testified that he did not publish content on TCPA University and Bartolme has testified that she did.

1

2      Dkt. 87, 6:1-4 should be struck.  OC offers nothing to support the claim "Plaintiff has

3  devised a scheme to create a for-profit business by manufacturing TCPA violation against

4  unsuspecting callers".

5      Dkt. 87, 6:5-20 should be struck.  Plaintiff has testified that he did not publish content on

6  *TCPAUniversity.com* and Bartolme has testified that she did.  Plaintiff has testified he did not

7  post the content of Exhibit 2 and OC has no evidence or foundation that he did.

8      Dkt. 87, 7:6-11 should be struck.  Plaintiff has testified he did not write a review of

9  "Correoschile" and this "Correoschile" entity appears to be fake.

10     Dkt. 87, 7:13-22 should be struck.  This is all speculation and guesswork without a shred

11 of foundation.

12     ## II.      RESPONSE TO CROSS MOTION - INTRODUCTION

13     PLEASE TAKE NOTICE that Plaintiff Nathen Barton ("Plaintiff") responds to Dkt. 87

14 the Response / Cross Motion for Summary Judgement by Defendant Serve All, Help All, Inc.

15 ("SAHA").

16                              **STANDING**

17     SAHA contends that filing too many TCPA claims negates standing.  Plaintiff is unable

18 to find any appeals court who has drawn that conclusion, and this case mirrors another case in

19 the ninth circuit:

20     "Mayvenn contends Trim falls outside the TCPA's zone of interests because she is a
21     "[p]rofessional TCPA plaintiff[]" who files TCPA actions "as a means to generate
       revenue." (See Mot. at 10:13-21.) In support of such argument, Mayvenn has identified
22     twelve other TCPA actions filed by Trim within the past four years"

23

24

NATHEN BARTON
                                                                   4618 NW 11TH CIR
                                                                   CAMAS WA 98607

"the Ninth Circuit has stated that "the term 'professional,' as in 'professional plaintiff,' is not a 'dirty word' and should not itself undermine one's ability to seek redress for injuries suffered, " see *Gordon v. Virtumundo, Inc*[1]. 575 F.3d 1040, 1056 (9th Cir. 2009)"

"[C]ourts have declined to find TCPA plaintiffs lack standing where, as here, "the phone number [at issue] was not procured for the express purpose of receiving calls on which to base future TCPA litigation." See *Perrong v. Victory Phones LLC*[2], Case No. 20-5317, 2021 WL 3007258, at *6 (E.D. Penn. July 15, 2021)"

Mayvenn further contends Trim's failure to "complain" or "respond with a 'STOP' message" upon receiving the first text from Mayvenn shows that she "took steps to allow the continuance of the injury while building a record to facilitate a later claim." (See Mot. at 10:13-11:2.) Such argument, however, "misstates the injury required to bring a TCPA claim and assumes a failure to mitigate statutory damages where no such duty exist[s]." See N.L. v. Credit One Bank, N.A.[3], Case No. 2:17-cv-01512-JAM-DB, 2018 WL 5880796, at *4 (E.D. Cal. Nov. 8, 2018) (rejecting argument that plaintiff who "allowed the calls to continue after consulting with legal counsel" lacked standing to bring TCPA claim, affirmed on appeal); see also *Ahmed v. HSBC Bank USA, Nat'l Assoc.*, Case No. ED CV 15-2057 FMO (SPx), 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017) (noting "weight of available authority indicates there is no duty to mitigate statutory damages in . . . TCPA cases" (internal quotation, citation, and alteration omitted)) (collecting cases)."

*Trim v. Mayvenn, Inc.*[4], 20-cv-03917-MMC, 4 (N.D. Cal. Apr. 5, 2022).

Plaintiff has testified in the declaration associated with this Response ¶1 that he did not obtain the phone number at issue for the express purpose of receiving calls on which to base future TCPA litigation and did obtain it for use by his minor son.

Exhibit U, (*Id* at ¶2), is a true and accurate (redacted) copy of an email Plaintiff sent to his minor child's mother the day he registered the phone number in question.  He informed the boy's mother "[redacted]'s phone number if we can get his service to work" (middle of page 3).

A Plaintiff's financial motives in filing TCPA lawsuits are not an element of standing:

---

[1] https://casetext.com/case/gordon-v-virtumundo

[2] https://casetext.com/case/perrong-v-victory-phones-llc-2

[3] https://casetext.com/case/nl-v-credit-one-bank-na

[4] *Trim v. Mayvenn, Inc.* , 20-cv-03917-MMC, 4 (N.D. Cal. Apr. 5, 2022)

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

"Nor is there anything out of the ordinary or constitutionally suspect about a plaintiff's being motivated by the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury. The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: "like statutory compensation for whistleblowers," they "operate as bounties, increasing the incentives for private enforcement of law." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*[5], 747 F.3d 489, 492 (7th Cir. 2014).

"It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

If Cunningham has forfeited his right to privacy because he allegedly welcomed the calls, so too have those potential plaintiffs—or, at the very least, they lost their privacy rights the moment they understood they could sue to vindicate them. The RRMS Defendants seem to imagine a Constitution that limits the right to sue under the TCPA to those who are ignorant of their right to sue under the TCPA."

"The Constitution requires no such result. The appropriate constitutional inquiry, rather, is whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward. Cunningham, like every other private citizen, has rights to privacy and seclusion recognized by the law and protected from certain trespasses on those rights."

*Cunningham v. Rapid Response Monitoring Servs., Inc.*[6]. Emphasis added. See also[7].

---

[5] https://casetext.com/case/chapman-v-wagener-equities-inc

[6] *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017

[7] *Powell v. West Asset Management, Inc.*, 773 F. Supp. 2d 761, 764 (N.D. Ill 2011) ("The TCPA does not expressly include a duty of callees to mitigate the statutorily-prescribed damages by answering . . . telephone calls received from automatic dialing machines and informing the calling entity that it has the incorrect number."). *Cunningham v. Capital Advance Solutions, LLC*, Civil Action No.: 17-13050 (FLW), 7 (D.N.J. Nov. 20, 2018), *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.* , 747 F.3d 489, 492 (7th Cir. 2014), *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011), and *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 WL 6236370, at * 3 (W.D. Pa. Oct. 24, 2016) (Kearney, J.). *Fillichio v. M.R.S Associates, Inc.*, No. 09–612629–CIV, 2010 WL 4261442, at *5 (S.D.Fla. Oct. 19, 2010).

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

In another case, a plaintiff "deceptively played along" for the purposes of identifying a Defendant, and the Defendants attempted to dismiss on this basis.  That court ruled:

"[E]ven if true, the fact that Abramson may have <u>posed as an interested consumer</u> does not, in itself, negate standing in private TCPA lawsuits. See, e.g., *Cunningham*, 251 F. Supp. 3d at 1194-95 (finding injury in-fact even though plaintiff admitted accepting telemarketing call in order to identify the party placing the call and cultivate a TCPA claim); *Mey v. Venture Data, LLC*[8], 245 F. Supp. 3d 771 (N.D. W. Va. 2017) ("While [defendant] is understandably frustrated by [plaintiff's] efficacy, <u>she is doing exactly what Congress intended - enforcing the law</u>.");"  *Abramson v. Oasis Power LLC*[9], *Case No. 2:18-cv-00479, (W.D. Pa. Jul. 31, 2018).*  Emphasis added

OC takes her argument to its illogical conclusion:

"Simply put, any calls and/or text messages Plaintiff may have received were not invasion of privacy, but rather business opportunities."

It would be controversial to say the least if this Court ruled any telemarketer could solicit Plaintiff's minor child's cell phone with impunity because Plaintiff enforced the law too much to have standing.

### TCPA University

Plaintiff has testified in the attached Exhibit A that he did not publish any content on the TCPA University website, nor ask for any content to be published on the TCPA University website, and further he asked that it be taken down.  Diana Bartolme ("Bartolme") has testified in the attached Exhibit B that she created the website as well as all the content on the website to use as a marketing tool for her own marketing efforts.

### Evidentiary Admissions

SAHA argues that statements made by lawyers on behalf of their clients are not evidence.  This is half true – it is not evidence for their *clients*.  These statements can be evidentiary

---

[8]   https://casetext.com/case/mey-v-venture-data-llc

[9]   https://casetext.com/case/abramson-v-oasis-power-llc-1

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

admissions - statements made by a party or its agent, regardless of whether they are made out of court or in court, typically used to contradict or otherwise impeach the party's current assertion.

"It is a general rule that an attorney is the agent of the client, authorized to act for and bind him by admissions and declarations when engaged in the actual management of a cause in court or by correspondence relating thereto, and in such connection the admissions are generally conclusive." *Tredwell v. Doncourt*[10].

### "Proving up" All Evidence in Dkt. 69

OC raises an issue (Dkt. 87, 5:4-10) with Admission 4 (Dkt. 69, 4:2-7), Admission 6 (Dkt. 69, 5:2-10), Admission 96 (Dkt. 69, 13:4-7) and Admission 109 (Dkt. 69, 2:4-8).  To the extent there is an issue, Plaintiff has attached the complete discovery documents to this Response as Exhibit E and Exhibit G, and testifies that they are complete and accurate copies of discovery responses from SAHA.  See Plaintiff's ¶7 and ¶8 of his associated declaration.

Figure 1 and Dkt 69, 10:2-9 are from Exhibit K attached to this Motion.  See Plaintiff's ¶9 of his associated declaration.  Interrogatory No 3 is from Exhibit L.  See Plaintiff's ¶10 of his associated declaration.  Interrogatory No 7 is from Exhibit M.  See Plaintiff's ¶11 of his associated declaration. Dkt 69, 15:2-5 is from Exhibit N.  See Plaintiff's ¶12 of his associated declaration.

Dkt 69, 6:12-14 is from Exhibit P.  See Plaintiff's ¶13 of his associated declaration.

Dkt 69, 10:15-20 is from Exhibit Q.  See Plaintiff's ¶14 of his associated declaration

## III.     SAHA PROVES MAJOR ELEMENTS OF PLAINTIFF'S CASE

In Dkt. 87 and their associated declarations, SAHA will prove the majority of Plaintiff telemarketing claims:

---

[10] *Tredwell v. Doncourt*, 18 App. Div. 219, (N.Y. App. Div. 1897)

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1.  SAHA obtained Plaintiff's number without consent to solicit it

2.  SAHA then solicited Plaintiff's number via an automatic dialer

3.  SAHA gave Plaintiff a fake name.

### SAHA Obtained Plaintiff's number Without consent to Solicit it

Dkt. 87 (page 8) says:

"Part of what they [SAHA] do is purchase information through a company that gathers public record information when Notice of Default and Notice of Trustee Sales are filed. Some of the information purchased is the phone number associated with the address on the notices." Emphasis added.

"At the time of the purchase of information which provided defendant with the number (360) 910-1019, the number was associated with a Mr. Wilder. On February 15, 2021, defendant placed an automated call to (360) 910-1019."

This corroborates Dkt. 69, 2:4-17 (where they got the 1019 number) and Dkt. 69, 3:5-12 (the automated call to (360) 910-1019).

SAHA admits the 1019 phone number came from public record information. It is self-evident the owner of a phone number scraped from public records (Notice of Default and Notice of Trustee Sales) did not consenting to solicitation phone calls. SAHA then admits they dialed it.

### The Defendants Admit They Gave a Fake Name

SAHA admits their actual *d/b/a* is *Nonprofit Alliance of Consumer Advocates* (Dkt. 89, 1:21-23) but they answer their phone "Nonprofit Alliance". Dkt. 87, 17:11-12. "Nonprofit Alliance" is not "Nonprofit Alliance of Consumer Advocates".

Allowing SAHA to use "shorthand"[11] for their real legal name would gut CFR § 64.1200(d)(4) and would not benefit consumers.

CFR § 64.1200(d)(4) does not give telemarketers the option of "shorthand" names:

---

[11]   Dkt. 87, 17:10-12: "They answer their phone "Nonprofit Alliance," which is a shorthand for Nonprofit Alliance of Consumer Advocates. See Declaration of Purandar Amin."

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

(4) Identification of sellers and telemarketers. <u>A person or entity making a call for telemarketing purposes must provide the called party with</u> the name of the individual caller, <u>the name of the</u> person or <u>entity</u> on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

By their logic, the California companies[12] "Nonprofit Alliance of Monterey County" and the "Tri-Valley Nonprofit Alliance" could also call themselves "Nonprofit Alliance" on the phone.

Other companies with long names containing "Nonprofit" and "Alliance" might also find it easier to identify themselves as "Nonprofit Alliance".  It certainly is easier to say than "National Alliance of Nonprofit Organizations", another California corporation.

These are *company* names, and 'shorthand' *d/b/a* names will make the situation worse.

If SAHA's argument succeeds, after a phone call, how would a consumer figure out who called?  What is to keep a telemarketing company from picking the *d/b/a* "California State Telemarketers" and then adopting the shorthand "California State" on the phone?  How would allowing SAHA to identify with a "shorthand" name benefit consumers?

"Turning to the TCPA's purpose we reiterate that the statute is remedial in nature and "should be construed to benefit consumers."" *Daubert v. NRA Grp., LLC*[13].

SAHA's "shorthand" identification fails[14].  <u>Any verbal consent Plaintiff gave SAHA for calls was for "Nonprofit Alliance" and not for SAHA.</u>  **"Nonprofit Alliance" never called Plaintiff.**  *Williams v. PillPack LLC*[15] holds telemarketers must register their fictitious names *before* using them.

---

[12]   See Exhibit W, a printout of California companies with "Nonprofit Alliance" in the name. See Plaintiff's ¶48 of his associated declaration.

[13]   *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 390 (3d Cir. 2017)

[14]   Similarly RCW 80.36.390(2) also does not allow 'shorthand' identification

[15]   *Williams v. PillPack LLC*, C19-5282 TSZ, 13 (W.D. Wash. Feb. 12, 2021)

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

"Indeed, the record reveals that Prospects DM ("Prospects") did not register one of the fictitious names it used in the Campaign until July 2018, nearly four months after the Campaign was launched."

At least in *Williams*, that defendant eventually registered the fictitious name, four months after the fact.  SAHA *never* registered "Nonprofit Alliance".

In *Williams*, the Defendants also did not obtain written consent for Pillpack, so even in cases where Prospects had consent for themselves, Prospects could not call consumers and transfer the calls to Pillpack because the consumers had not expressly consented.

"In 2012, the regulations were amended to require that a call using an ATDS or a prerecorded voice—which "introduces an advertisement or constitutes telemarketing," or is made to a "residential line"—must have been made with the "prior express **written** consent of the called party." 47 C.F.R. §§ 64.1200(a)(2), (a)(3); see Rules and Regulations Implementing the TCPA of 1991, 27 FCC Rcd 1830, 1838 (2012)." *Williams*.  Emphasis added.  See also *Satterfield v. Simon & Schuster, Inc.* [16], 569 F.3d 946, 955 (9th Cir. 2009) ("[C]onsent to receive promotional material by [a third party] . . . cannot be read as consenting to the receipt of [defendant's] promotional material."[17].

This again mirrors *Williams*. SAHA did not identify themselves and they did not identify they are calling on behalf of someone else.  Exhibit J (highlighted on page 11) makes clear SAHA is calling on behalf of CDLG[18] (Consumer Defense Law Group):

"Reminder that there's a separate between the Non-profit [SAHA] and CDLG.  Clients need to know the distinction that we are indeed separate entities.  Advocates you're not part of

---

[16]  https://casetext.com/case/satterfield-v-simon-schuster-inc

[17]  Emphasis added.

[18]  Plaintiff asks the Court to take Judicial Notice of Yahoo news article finance.yahoo.com/news/foreclosing-lender-reduces-400k-off-070100048.html as shown in Exhibit V.  Plaintiff's ¶16 of his associated declaration.

"That same day Mr. Canas received a call from the Nonprofit Alliance of Consumer Advocates, the legal clinic division of the Charitable Organization 'Serve All Help All'"

"The Nonprofit Clinic postponed the Foreclosure Trustee Sale and recommended Mr. Canas speak to any experienced Lender Litigation Attorney. He was then introduced to Attorney John E Mortimer's Consumer Defense Law Group (CDLG)".

CDLG." Nowhere in their robocall or Exhibit C does SAHA disclose that they are calling on behalf of CDLG. They admit "Clients need to know the distinction . . .".

This Court should hold four things in this case as a matter of law.

1. A consumer cannot consent to receive future calls from SAHA when on the call SAHA identifies themselves with the fake business name "Nonprofit Alliance"

2. A consumer cannot consent in writing during a voice call

3. On the 2/15/2021 call that SAHA initiated to Plaintiff with an automatic dialer and that started with artificial or prerecorded voice, nowhere did SAHA inform Plaintiff that future calls would be placed with an automatic dialer and that contained artificial or prerecorded voice.

4. By not disclosing that future calls might/would be placed by an automatic dialer and that started with artificial or prerecorded voice, SAHA could not have obtained consent for such future calls.

# IV.    ADDRESSING OTHER ISSUES

## SAHA is NOT Exempt from the TCPA

OC argues that *Limits on Exempted Calls Under the Telephone Consumer Protection Act of 1991*[19] exempts their calls from the TCPA.  Dkt. 87, pages 16-17.

OC is mistaken.  The FCC letter states it is "Effective March 29, 2021".  Plaintiff does not allege to have received a call from SAHA on or after this date.  OC also failed to be forthright that the letter does not apply to the 'artificial voice' and 'opt out telephone number' regulations[20].

---

[19]    *Limits on Exempted Calls Under the Telephone Consumer Protection Act* of 1991, a Rule by the Federal Communications Commission, Federal Register, 11443, 02/25/2021

[20]    See Exhibit H (the 2/25/2021 FCC letter) page 11443, Section DATES: "Effective March 29, 2021 except for the amendments to § 64.1200(a)(3)(ii) through (v), (b)(2) and (b)(3), and (d), *which are delayed indefinitely*"

**SAHA is Deep in the Loan Business**

OC wrote:

"He [Plaintiff] wants this court to believe that the documents provided by SAHA make clear that the robocall and ensuing telephone conversation is all a sales pitch for a mortgage application, with SAHA directly pocketing money. That is not the case. Barton also purports that because part of what SAHA and its dba NACA provide is "mortgage services." They do not." Dkt 87, 17:14-18.

SAHA said otherwise in an internal newsletter dated 1/7/2020, attached to Exhibit J:

"Tier 2 product.  Donation you get a commission.  Credit repair.  Living trust.  Without a doubt you can pick up a commission on an approved Loan Mod[ification]."

"We lose loans become of timing."

"Regarding Bridge Loans, all files need to be fully submitted.  Copy of Timelines for Bridge loans was passed out to Advocates."

"Regular loan is next.  We will have advertising in the next weeks to get regular loans going"

Exhibit J makes clear SAHA is a boiler room for loans, with callers picking up commissions for "upselling" donations, credit repair, living trusts, and loan modifications.

**Recorded Calls**

SAHA turned over to Plaintiff two recording files of two calls between SAHA and Plaintiff.  Dkt 69, page 15, starting at line 16.  It is lawful to record conversations "which occur anonymously or repeatedly".  RCW 9.73.030(2).

Above Plaintiff has shown that SAHA gave a fake name, thus the 2/25/2021 call Plaintiff recorded fit the exception of "anonymously".  Further, Plaintiff has testified in the associated declaration (¶3) that he believes SAHA had called at least several times before the 2/15/2021, therefore meeting the exception of "repeatedly".

1

## V.    INJUNCTIVE RELIEF

2

SAHA had admitted to the business practice of scraping public records for phone

3

numbers and then initiating autodialer calls using artificial or prerecorded speech.

4

"The [FCC] has interpreted "willful or knowing" under the Telecommunications Act (of

5

which the TCPA is a part), as not requiring bad faith, but only that the person have reason to

6

know, or should have known, that his conduct would violate the statute." *Manufacturers Auto*

7

*Leasing, Inc. v. Autoflex Leasing, Inc.*[21].  Emphasis added.

8

SAHA should have known that scraping public records for phone numbers and then

9

calling them with artificial or prerecorded voice is illegal.

10

SAHA's business model is willfully or knowingly placing illegal calls and they should be

11

enjoined from robocalling anyone who has not given prior express written consent to be called.

12

## VI.    PLAINTIFF IS NOT ASKING FOR "DO NOT CALL LIST" DAMAGES

13

14

OC repeatedly brings up that by talking with SAHA to determine their actual identity,

15

Plaintiff consented to more voice calls.  This topic is moot – some time ago Plaintiff informed

16

OC that he was not pursuing 'do not call list" violation claims under 47 U.S.C. 227(c).

17

Plaintiff's telemarketing claims are using artificial or prerecorded voice without consent,

18

failing to identify themselves, and failing to provide a button touch "opt out" mechanism.

19

No matter how you slice it, the 2/15/2021 robocall is free of any consent issues – SAHA

20

admits they called Plaintiff and their contention is Plaintiff consented to *additional* phones calls

21

*during* that call.

22

23

24

[21] *Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W.3d 342, 346 (Tex. App. 2004)

MOTION FOR SUMMARY JUDGEMENT - 13 / 15
CASE NO 3:21-CV-05338-BHS

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    That leaves them the consent issue of that phone call, Plaintiff could not have consented

2    to that robocall prior to SAHA initiating the phone call.  That robocall alone is actionable.

3                        **VII.    CONCLUSION**

4    Plaintiff has demonstrated:

5    SAHA obtained Plaintiff's number from public documents.

6          • Dkt. 87, 8:4-7. Dkt. 57, 2:22-24, Exhibit R

7    SAHA dialed Plaintiff's number without prior consent on 2/15/2021 and in that call they
     used artificial or prerecorded voice
8
9          • Dkt. 87, 8:12. Dkt. 69, 3:5-13, Exhibit R

10   In the 2/15/2021 call, SAHA gave Plaintiff a fake name and did not identify themselves

11         • Dkt. 87, 17:10, Exhibit C, Exhibit J (SAHA is calling for CDLG)

12   SAHA is dialing to solicit loans

13         • Dkt. 69, starting at page 4.  Exhibit J starting at page 11.  Highlighted.

14   Plaintiff did not consent to more calls using artificial or prerecorded voice

15         • Exhibit C – Transcript of call provided by SAHA

16   SAHA placed three phone calls to Plaintiff that contained artificial or prerecorded voice

17         • Exhibit L, page 7, Interrogatory No. 3; Exhibit M, page 5, Interrogatory No. 7.

18   The artificial/prerecorded voice calls did not have the "opt out" button press option
     required by law.
19
           • Dkt. 69, 3:5-13, Exhibit K
20
     SAHA recorded two phone calls between SAHA and Plaintiff
21
           • Exhibit C, Exhibit D, turned over to Plaintiff by SAHA
22

23

24

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1   _____ s/ Nathen Barton _____                    _____7/20/2022_____
2          (signed)                                              (Dated)

3   Nathen Barton
    (469) 347 2139
4   4618 NW 11th Cir
    Camas WA 98607
5

6                       CERTIFICATE OF SERVICE

7         I hereby certify that on July 20, 2022, I caused the foregoing document to be

8   electronically filed with the Clerk of the Court using the Electronic Filing (CM/ECF) system,

9   which will send notification of such filing to all counsel of record and all pro se parties registered

10  to use the CM/ECF system.

11

12  _____ s/ Nathen Barton_____                        _____7/20/2022_____
13          Nathen Barton                                          (Dated)

14

15

16

17

18

19

20

21

22

23

24