UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHEN W. BARTON,

                    Plaintiff,

        v.

SERVE ALL, HELP ALL, INC.,

                    Defendant.

CASE NO. 3:21-cv-05338-RJB

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
AND MOTIONS TO STRIKE

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment on

Counterclaim (Dkt. 111), the Defendant Serve All, Help All, Inc.'s ("SAHA") Motion to [sic] for

Summary Judgment Dismissal on Plaintiff's Second Amended Complaint (Dkt. 120), and

SAHA's Cross Motion for Counterclaim in Favor of SAHA (Dkt. 124)[1].  The Plaintiff has also

moved to strike various pleadings (Dkts. 128 and 131).  The Court has considered the pleadings

filed in support of and in opposition to the motions and the file herein.

---

[1] Although SAHA's cross motion for summary judgment on its counterclaims is noted for Friday, further briefing is
unnecessary because it is clear that there are issues of fact as to the fraud and negligent misrepresentation
counterclaims and that the fraud by omission counterclaim should be dismissed.

1    The Plaintiff, *pro se,* brings this case alleging violations of the federal Telephone

2  Consumer Protection Act, 47 U.S.C. § 227, *et. seq.,* ("TCPA") and violations of state law under

3  Washington's Automatic Dialing and Announcing Device Act, RCW 80.36, *et. seq.*

4  ("WDADA"), Telephone Solicitation Act, RCW § 80.36, *et. seq.* ("WTSA"), Commercial

5  Solicitation Act, RCW  § 19.158, *et. seq.* ("WCSA"), and the Washington State Privacy Act,

6  RCW § 9.73, et. seq. ("WSPA") in connection with calls made to a mobile phone number.  Dkt.

7  45.  Defendant SAHA counterclaims for fraud and negligent misrepresentation. Dkt. 82.

8    For the reasons provided below, the motions for summary judgment (Dkts. 111, 120,

9  124) should be denied, except that Plaintiff's summary judgment motion on SAHA's fraud by

10  omission claim (Dkt. 111) should be granted and SAHA's summary judgment motion on

11  Plaintiff's WSPA claim (Dkt. 120) should be granted.[2]

12    **I.      PRIOR CASES, RELEVANT FACTS AND PROCEDURAL HISTORY**

13    **A. PLAINTIFF'S PRIOR CASES**

14    This is one of over a dozen federal cases filed by Plaintiff, *pro se,* alleging violations of

15  the TCPA.  *Barton v. LeadPoint Inc., et al.*, No. 3:21-cv-05372-BHS (W.D. Wash.); *Barton v.*

16  *DirecTV LLC,* No. 3:21-cv-05423-BHS (W.D. Wash.); *Barton v. Asset Realty LLC*, et al., No.

17  3:21-cv-05462-RJB (W.D. Wash.); *Barton v. The Rian Group Inc., et al.*, No. 3:21-cv-05485-

18  BHS (W.D. Wash.); *Barton v. JMS Associate Marketing LLC*, et al., No. 3:21-cv-05509-RJB

19  (W.D. Wash.); *Barton v. Delfgauw, et al.*, No. 3:21-cv-05610-JRC (W.D. Wash.); *Barton v.*

20  *LendingPoint LLC, et al.*, No. 3:21-cv-05635-BHS (W.D. Wash.); *Barton v. American*

21  *Protection Plans LLC*, No. 3:21-cv-05669-BHS (W.D. Wash.); *Barton v. SelectQuote Insurance*

22

23   [2] Plaintiff complains that the Court denied his motion to file an additional summary judgment motion.  As explained below, the Plaintiff's WSPA claim should be dismissed and there are issues of fact as to his remaining claims. Further summary judgment motions on his claims would be futile.

24

*Services*, No. 3:21-cv-05817-BHS (W.D. Wash.); *Barton v. America's Lift Chairs LLC et al.*, No. 3:21-cv-05850-BHS (W.D. Wash.); *Barton v. Sopi Financial LLC*, et al., No. 3:21-cv-05934-RJB (W.D. Wash.); *Barton v. Allstate Insurance Company*, et. al., No. 3:22-cv-5260-JRC; and *Barton v. Litigation Practice Group PC, et al.*, 3:22-cv-05483-TLF.  He has also filed TCPA cases in other U.S. District Courts (*See e.g. Barton v. Associated Credit and Collection Bureau Inc.*, No. 3:05-cv-00251 (N.D. Texas)) and in Washington state court (*See e.g. Barton v. Laurent, et. al.,* Clark County, Washington District Court case number 20-S-000529)).

After the Plaintiff's TCPA and state law claims in *Barton v. LeadPoint Inc., et al*., No. 3:21-cv-05372-BHS (W.D. Wash.) ("*LeadPoint*") were dismissed, on May 22, 2022, Judge Settle ordered an award of $40,000 in attorneys' fees against the Plaintiff "based on the frivolous, harassing, bad faith nature of Barton's TCPA claim and his litigation tactics." *Id.*, Dkt. 76.

## B.  RELEVANT FACTS RELATED TO THIS CASE

In this case, the Plaintiff states that on July 9, 2020, he purchased a mobile phone for one of his minor children with the phone number 360-XXX-1019.  Dkt. 121-2 at 24 and 53.  It is this phone number that is the subject of this lawsuit and at least five of Plaintiff's other TCPA cases.[3] *Id.* at 24 and 47-51.  The Plaintiff contends that while his son uses the phone, he also uses it to make calls and to monitor what his son is doing on the phone.  *Id.* at 52.

Defendant SAHA acknowledges that it called this phone (with the number 360-XXX-1019) on three different occasions:  February 15, 2021, February 19, 2021, and February 22, 2021.  Dkt. 121-13 at 7.  Defendant SAHA is a 501(c)(3) non-profit company doing business as Nonprofit Alliance of Consumer Advocates.  Dkt. 121-11 at 3-9.  Its articles of incorporation

---

[3] The Plaintiff's Amended Complaint and the pleadings in this case mention calls to another number 972-XX-5749. The parties' briefing does not make it clear whether the motions apply to claims regarding this number.  To the extent that the Plaintiff is asserting claims based on calls to 972-XXX-5749, the findings in this order regarding standing to bring TCPA claims and the other issues of fact apply to claims regarding that number.

1  state that its purpose, in part, is to: "to provide financial aid and assistance to deserving persons .

2  . . for . . . housing . . . needs . . ." *Id.* at 3.

3          According to Pepe Abad Delavega, Defendant SAHA's Volunteer Loss Mitigation

4  Director, SAHA offers various services to SAHA's clients facing foreclosure on their homes

5  including: offering refinance opportunities with Faith First Bancorp and Pacific Bay Mortgage (if

6  the client completes a forbearance plan), zero cost loan modification assistance if the client is not

7  eligible for a new loan, and real estate services with Homesaver Realty and First Faith Realty to

8  help them sell the property and retain some of the equity if the client cannot refinance or get a

9  loan modification.  Dkt. 112-3 at 3.  SAHA also makes "available experienced foreclosure

10 defense civil litigation and bankruptcy attorneys for clients should clients chose instead of selling

11 properties to relocate." *Id.*  Mr. Delavega contends that SAHA does not have any employees - it

12 just has volunteers.  *Id.*  He also maintains that SAHA does not have contracts with many of the

13 entities for which it provides referrals except that "there has been an agreement only by and

14 between Professional Business Management (PBM) which is a Management Services

15 Organization (MSO) and CLG and First Faith Bancorp/Realty." *Id.*

16         In order to determine who SAHA will contact to offer its services, Mr. Delavega reviews

17 public record data and looks for properties with notices of default and notices of trustee sales.

18 Dkt. 112-3 at 2.  He then finds "known" mobile numbers associated with the properties from

19 various search engines.  *Id.*  Chris Duncan, SAHA's Outreach Manger, uploads the list generated

20 by Mr. Delavega into SAHA's system, CallHub.  Dkt. 112-2 at 1.  Their system creates a script,

21 using the property owner's name, the property's address, and the sale date, and an "automated

22 voice message" is generated.  Dkt. 112-2 at 3.

23

24

1     In response to one of the Plaintiff's discovery requests, SAHA produced a list of numbers

2  called that included the number at issue here.  Dkt. 112-9.  On this list was a property located at

3  "4738 Bellwood Drive North East" purportedly belonging to a William Wilder.  Dkt. 112-9 at

4  21.  According to their search, SAHA determined that a phone number "affiliated" with the

5  property belonged to William Wilder's son, Kevin Gene Wilder.  See Dkts. 112-4 at 2 and 112-2

6  at 4.  That phone number is the one at issue in this case:  360-XXX-1019.  Dkt. 112-9 at 21.  By

7  the time SAHA called the number in February of 2021, it belonged to the Plaintiff.  *See* Dkt. Dkt.

8  121-2 at 53.

9     An automated voice message for William Wilder, at phone number 360-XXX-1019, was

10  created.  Dkt. 112-2 at 3.  On February 15, 2021, that voice message that sent to the Plaintiff's

11  son's phone and provided was as follows:

> ATTENTION <u>William Wilder</u> at <u>4738 Bellwood Drive North East</u>. This is a
> Public Service Announcement for Homeowners in DEFAULT. The Federal
> Governments temporary ban on foreclosures has been lifted, the Sale Date on
> <u>April 2nd</u> is being reset, you must act now. The National Mortgage Payment
> Relief plan can officially relieve you of making Mortgage Payments all together
> for up to 12 months, and you may also be eligible to pay off debt and get cash
> reserves until this Covid crisis is over. A Not for Profit Clinic has been set up to
> help check your eligibility for FREE by Pressing 0 on your phone right now. The
> Federal Reserves dropped the rate to ZERO and just approved TWO TRILLION
> dollars to shelter the economy from the effects of this virus. A Nonprofit 501 C3
> has been set up to help you apply for FREE simply Press 0 or call 844-622-2243
> That is 844-NACA-AID. Again <u>William Wilder</u> at <u>4738 Bellwood Drive North
> East</u>. This is a Public Service Announcement for Homeowners in DEFAULT. The
> Federal Governments temporary ban on foreclosures has been lifted, the Sale Date
> on <u>April 2nd</u> is being reset you must act now. Pressing 0 on your phone right now
> or call us back at 844-622-2243. Thank you and have a great day.

Dkt. 112-2 at 3.  The Plaintiff maintains that he "had heard SAHA's robocalls prior to February

15, 2021."  Dkt. 112 at 1.  The Plaintiff denies consenting to phone calls from SAHA that use

artificial voice or speech.  Dkt. 129 at 2.  The Plaintiff responded to the call and he spoke with a

person at SAHA named Carlos Cotta.  Dkt. 112 at 2.  The Plaintiff states that he "believed that if

1   [he] did not gain [Mr. Cotta's] trust, he would not reveal who he worked for."  Dkt. 112 at 2.

2   Their conversation went as follows:

3       CARLOS- Nonprofit Alliance How may I help You.
        CALLER- Hello?
4       CARLOS-Yes. Hello?
        CALLER- How are you?
5       CARLOS- I'm good. I'm good, sir. We reached out on the dialer?
        CALLER- Yeah
6       CARLOS- Okay. Are you currently in foreclosure, sir? Hello?
        CALLER-Yeah, I'm here.
7       CARLOS- Okay. Okay. Are you currently in foreclosure?
        CALLER- We are not there yet
8       CARLOS- All. Okay. Okay. Okay. So, uh, uh,
        CALLER- Are you still able to help?
9       CARLOS- yes sir. Yes, sir. Nobody's helped you yet. Can we reach out to your
        lender?
10      CALLER- No, well we bought, we've asked for forbearance they said we don't
        qualify for that anymore.
11      CARLOS-Okay. Okay. Have you, have you asked for, uh, for, uh, a loan
        modification?
12      CALLER-Uh, no. Uh, I don't know. I don't know what that is.
        CARLOS-Perfect. Perfect. Basically, a loan modification is just us, uh, preparing
13      a package, sending it out to the lender and asking for them to modify our, our
        payments get me. So then the, what happens is that we we reach out to the lender.
14      We prepare this package. Uh, they have to review it and the time that they review
        it, they have to postpone the sale. They can't go ahead with any foreclosure
15      activity.
        CALLER- Ohhh
16      CARLOS- So then, uh, let me start an application do you have time to talk right
        now, sir.
17      CALLER- YES
        CARLOS-Okay. So just start out right here. Uh, here, give me a second, what's
18      your full name.
        CARLOS- Hello? Hello.
19      CALLER- I'm here.
        CARLOS- I'm trying to push you on speakers. Hello?
20      CALLER- Yes, I'm here.
        CARLOS- What's your name?
21      CALLER- My name is Nathan.
        CARLOS- Nathan - Ahaa…
22      CALLER-Yes
        CARLOS- Okay. And what's that? What's the address on your property?
23      CALLER- Uh, it is 2209 Northeast one 150th avenue, Vancouver, Washington.
        CARLOS-Okay.

24

1   CALLER- Um, my connection is not good if we get disconnected. How do I get back? How do I get back with you?

2   CARLOS- You write down my numbers for my, to my personal debt. It's 949-[XXX-XXXX].

3   CALLER- Oh, great. Great.

CARLOS- Okay. And, uh, do you have any, do you own any other properties that
4   might affect the rest of the resolution?

CALLER- No.

5   CARLOS- Okay, perfect. Uh, what's your email address, sir?

CALLER- Uh, are you ready?

6   CARLOS- Yeah.

CALLER- Uh, if, uh, farmers like, like a farmer farmer and then branch B R A N
7   C H 20 fourteen@gmail.com.

CARLOS- Okay. So I got farmers branch2014@gmail.com, right. Okay.

8   CALLER- YES

CARLOS- And what's, what's the best mobile number to reach you sir?

9   CALLER- Um, well I guess, um, uh, I guess this one.

CARLOS- All right, so that's a 3 6 0, uh, [XXX] 10 19, right?

10   CALLER- Yes. Um, you know, it's my, it's my, uh, uh, my son's number, but, uh, I guess I could also give you my own cell.

11   CARLOS- I think I, I am, I can reach it to you. The number I can reach you at, it was probably All right.

12   CALLER- Okay

CARLOS- So what, what number is that?

13   CALLER- Uh, well, uh, my personal cell is 972 – [XXX]-5749.

CARLOS- Okay.

14   CARLOS- Uh, what would you say is the value right now on your property?

CALLER- Uh, well, when we bought the house, we bought the house for, I think
15   350,000.

CARLOS-Okay. Okay. Um, here we go here. Let me look it up. That might, that
16   might work out better. Okay.

CARLOS- Okay. So here, I'm on Zillow for 430,000.

17   CALLER- Well, it could be the market. They fade the market is hot here.

CARLOS- Okay. Uh, w what would be the total payoff on your mortgage right
18   now?

CALLER- I think it's about 250,000.

19   CARLOS- 250,000. Okay. And, uh, guess, uh, the properties in default, correct? Uh, have you given you a sell date yet?

20   CALLER- We have not heard.

CARLOS- Okay Okay so I'm just gonna put you don't know.

21   CARLOS- Okay. Um, what's your payment right now, sir?

CALLER-I think it's about, I think they want about 2000 a month.

22   CARLOS-Okay. Uh, do you know how many payments, how many payments you are currently behind?

23   CALLER- I think it's, uh, I think it's about Nine (9)

CARLOS- Okay. Uh, do you know what the delinquent amount is right now?

24

CALLER- I do not. The escrow and the fees And everything just keeps going up.
CARLOS- It gets you. I get you. All right. So it's a 2000 for nine months. I'm
going to, I'm just going to put a ballpark figure 20,000. Okay. What's the, what's
the lender, uh, on your, on your mortgage.
CALLER- Uh,. Uh, Freddie Mac.
CARLOS- Freddie Mac.

Dkt. 112-5 (full phone numbers redacted).  Although this call appears incomplete, this is the

entire transcript in the record.  In any event, the Plaintiff recorded his conversation with Mr.

Cotta and posted it on YouTube.  Dkt. 121-2 at 61.  SAHA acknowledges that it recorded two

conversations with the Plaintiff, including this one.  Dkt. 112-4 at 4.

On February 17, 2021, Mr. Cotta sent the Plaintiff an email at the address provided that

indicated which documents the Plaintiff needed to provide and which forms the Plaintiff needed

to fill out to start the loan refinance process.  Dkt. 112-7.  That same day, the Plaintiff responded

to Mr. Cotta's email as follows:

Hi Folks,

I am sorry, I am not really interested in loan modification. A couple days ago I got
an illegal robocall and I played along to see who it was and unfortunately it was
you folks.

I have a mission, to get rid of robocalls. Just today I dropped by my courthouse to
file these. You can see they are all different defendants. If you folks would like to
talk it over, I am willing. Otherwise, within in a few weeks I will be down there
for your company.

This email is a Litigation Hold - please preserve all records and documents related
to telephone calls to my phone numbers 972-XXX-5749 and 360-XXX-1019.

Nathen

Dkt. 112-8.  Attached to the email were various civil complaints.  *Id.*  SAHA maintains that on

February 25, 2021, the Plaintiff's child's phone number was placed on their "do-not-call" list and

it did not contact him again.  Dkt. 121-13 at 7.

The Plaintiff states that he is self-employed, running a business called "Bling your Band," and works out of his home.  Dkt. 121-2 at 82.  In addition to monetary damages, the Plaintiff states that he files his TCPA lawsuits to get people to stop calling his mobile numbers. Dkt. 121-2 at 89.

Defendant SAHA contends that the Plaintiff's sole motivation in filing these cases is financial.  Dkts. 120 and 124.  In support of its responses and motion, SAHA attaches screen shots from a "TCPA University" website (Dkt. 121-1, at 2-11) which provides, in part:

> TCPA University is a non-profit organization that offers free resources and consultancy services to help everyday citizens stand up for their rights against invasive Telemarketers.  Founded in 2020, the company specializes in telecommunication privacy rights according to local and federal statutes, particularly the [TCPA].
>
> TCPA University's mission is to help end consumer abuse and to help others lay claim to the tens of thousands of dollars in compensation they deserve.  Nathan Barton, founder of TCPA University, leverages several years of personal experience, extensive research, and a track record of successful lawsuits to help others get there faster and easier than ever before – all without needing to hire a lawyer . . .
>
> I have been taking telemarketing companies . . . to court one phone number at a time, resulting in enormous compensation for the damages.  I'm talking several tens of thousands of U.S. dollars, folks, and it keeps coming. . .
>
> If you've experienced anything like my story, you are probably just as fed up as I was. . . I want to show you how I did it – how I collected evidence, how I wrote my complaints, how I filed the paperwork, and how I pushed back with the few telemarketers that got aggressive. . . .
>
> I offer comprehensive consultancy services. Click here to learn more.

Dkt. 121-1, at 3-6.  The Plaintiff denies ever posting anything on this website and claims that a woman he knows created it as an example of her work as a web designer for her potential clients. Dkt. 121-2 at 59; 69-71; 78-79.  He contends that he did not give her permission use his name, to post pictures of him, or tell his story.  *Id.* at 71-75.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 9

C.  **PROCEDURAL HISTORY**

On September 7, 2022, SAHA's motion to dismiss for lack of subject matter jurisdiction was denied.  Dkt. 98.  In that motion, SAHA contended that the Plaintiff couldn't show that he has an "injury in fact" because he had not shown that he has suffered a violation of a privacy interest that the TCPA is intended to address.  Dkt. 87.  It argued that the Plaintiff "initiated and manufactured the TCPA violations for which he now sues."  *Id.*  The order found that there were issues of fact as to why the Plaintiff brought this case and denied the motion.  *Id.*

That same order addressed the parties' cross motions for summary judgment.  Dkt. 98.  The Plaintiff sought summary judgment on the three February 2021 calls made to the 360-XXX-1019 number and SAHA cross moved for summary judgment dismissal of the case, arguing that it is a non-profit organization exempt from the TCPA and state claims, that Plaintiff consented to the calls, and that the Plaintiff was not damaged.  *Id.*  After determining that there were issues of fact precluding summary judgment, the motions were denied.  *Id.*

D.  **PENDING MOTIONS**

On January 5, 2023, the Plaintiff filed the pending Motion for Summary Judgment on Counterclaim.  Dkt. 111.  He moves for summary judgment on all of SAHA's counterclaims and moves for summary judgment on his state law claim for violation of WDADA.  *Id.*

SAHA responds, opposes the motion for summary judgment and moves for summary judgment on its counterclaims.  Dkt. 124.  It points to various allegations in its answer and argues that these allegations are supported by evidence.  *Id.*  The Plaintiff moves to strike SAHA's motion for summary judgment on its counterclaims as untimely and overlong (Dkt. 131) and opposes the motion (Dkt. 134).

On January 16, 2023, SAHA filed its motion for summary judgment and argues that the Plaintiff's TCPA claims should be dismissed.  Dkt. 120.  SAHA again argues that the Plaintiff does not have standing to bring a TCPA claim.  *Id.*  As was true with SAHA's prior motion, this motion should be considered a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Id.*  SAHA also moves for summary judgment on the Plaintiff's state law claims.  *Id.*  The Plaintiff moves to strike SAHA's motion for summary judgment and opposes the motion.  Dkt. 128.

The parties' briefing is a confusing mess.  Both sides failed to provide the basic elements of their claims or counterclaims and failed to point to the evidence that supports each element or note the lack thereof.

**E.  ORGANIZATION OF OPINION**

The discussion section will be organized as follows:  it will first address SAHA's motion to dismiss for lack of subject matter jurisdiction, second, it will address the Plaintiff's motions to strike, third, it will provide the standard on summary judgment, and then the motions and cross motions will be addressed by claim or counterclaim.

## II.   DISCUSSION

**A.  SAHA'S MOTION TO DISMISS TCPA CLAIM FOR LACK OF JURISDICTION**

As stated in the September 7, 2022 order denying SAHA's motion to dismiss for lack of subject matter jurisdiction (Dkt. 98), there are issues of fact as to whether the Plaintiff has an "injury in fact" which would give him standing to bring a TCPA claim.  In its renewed Fed. R. Civ. P. 12(b)(1) motion, SAHA repeats its prior assertions regarding the Plaintiff's motivation in bringing the lawsuit. Dkt. 120.  The legal authority and analysis provided in the September 7, 2022 order is valid and is adopted here.  SAHA's renewed motion (Dkt. 120) should be denied.

1    In his various briefs, the Plaintiff raises several arguments on why he should be granted

2    summary judgment on his TCPA claims.  The first issue to be decided must be whether he has

3    standing to bring a TCPA claim.  There are issues of fact as to whether he has standing to bring

4    TCPA claims at all.  Accordingly, his arguments on the merits are premature.

5    **B.  SUMMARY JUDGMENT STANDARD**

6    Summary judgment is proper only if the pleadings, the discovery and disclosure materials

7    on file, and any affidavits show that there is no genuine issue as to any material fact and that the

8    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

9    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

10   showing on an essential element of a claim in the case on which the nonmoving party has the

11   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

12   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

13   for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

14   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

15   metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

16   sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

17   the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

18   *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

19   The determination of the existence of a material fact is often a close question.  The court

20   must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

21   which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W.*

22   *Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

23   nonmoving party only when the facts specifically attested by that party contradict facts

24

1  specifically attested by the moving party.  The nonmoving party may not merely state that it will

2  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

3  to support the claim.  *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

4  255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

5  will not be "presumed."  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

6  **C.  PLAINTIFF'S MOTIONS TO STRIKE**

7      The Plaintiff moves to strike SAHA's Motion for Summary Judgment (Dkt. 120) arguing that

8  it is, in essence, an improperly filed motion for reconsideration of the Court's prior order

9  denying SAHA's first motion to dismiss and motion for summary judgment.  Dkt. 128.  The

10  Plaintiff's motion (Dkt. 128) should be denied.  The parties have engaged in further discovery

11  meriting consideration of the motion.

12      The Plaintiff moves to strike SAHA's cross motion for summary judgment on its

13  counterclaims (Dkt. 124).  Dkt. 131.  He argues that the motion was not timely filed and that it is

14  32 pages rather than 24 pages.  *Id.*  This motion to strike (Dkt. 131) should be denied as moot.

15  As stated below in sections D. and E., there are issues of fact as to SAHA's fraud and negligent

16  misrepresentation counterclaims.  Further, Plaintiff's motion for summary judgment on SAHA's

17  counterclaim for fraud by non-disclosure should be granted and the claim dismissed.

18  **D.  PLAINTIFF'S TCPA CLAIM**

19      SAHA argues that even if the Plaintiff has standing to bring his TCPA claim, the claim

20  should be dismissed on summary judgment.

21      It is a violation of the TCPA to "make any call (other than a call made for emergency

22  purposes or made with the prior express consent of the called party) using any automatic

23  telephone dialing system or an artificial or prerecorded voice . . . to any telephone number

24

1   assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA prohibits

2   "almost all robocalls to cell phones."  *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct.

3   2335, 2344 (2020)(invalidating and severing government debt-collection exception and

4   upholding remainder of the robocall provision of TCPA).

5      SAHA argues that the TCPA does not apply because it did not use an automatic

6   telephone dialing system.  Dkt. 120.  SAHA fails to acknowledge that the statue prohibits calls to

7   cell phones made "using any automatic telephone dialing system **or** artificial or prerecorded

8   voice."  47 U.S.C. § 227(b)(1)(A)(iii)(*emphasis added*).  It admits that it used a prerecorded

9   voice for the three calls in February 2021 to the 360-XXX-1019 cell phone number.

10     SAHA asserts that the Plaintiff's TCPA claims should be dismissed because the calls did

11  not solicit a donation or sale of products and so do not meet the definition of "solicitation" set

12  forth in 47 U.S.C. § 227(a)(4).  Dkt. 120.  It also asserts that it is categorically exempt from the

13  TCPA because it is a nonprofit organization based on the same provision.  *Id.*

14     Section 227(a) contains definitions applicable to the TCPA, and includes a definition for

15  "telephone solicitation," which is "the initiation of a telephone call or message for the purpose of

16  encouraging the purchase or rental of . . . property, goods, or services, which is transmitted to

17  any person, but such term does not include a call or message . . . by a tax exempt nonprofit

18  organization."  47 U.S.C. § 227(a)(4).

19     SAHA's argument that it is categorically exempt from application of the TCPA is

20  unavailing.  The provision the Plaintiff alleges was violated was § 227(b)(1)(A)(iii) which

21  prohibits "calls (other than a call made for emergency purposes or made with the prior express

22  consent of the called party) using any automatic telephone dialing system or an artificial or

23  prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  It

24

1   does not require that the call be a "telephone solicitation."  Further, even if this provision exempts

2   nonprofit entities, there are issues of fact as to whether SAHA was, in fact, engaging in

3   commercial solicitation for profit entities at the time.  While it contends that it offers services for

4   free, it acknowledges that it refers people to specific lenders or real estate companies depending

5   on the client's needs and preferences.  SAHA acknowledges that it has a contractual relationship

6   with some of these entities.  There are issues of fact as to whether these calls were really made

7   for these for profit entities.

8   SAHA next argues that the TCPA claims should be dismissed because the Plaintiff

9   consented to the calls.  Under 47 C.F.R. § 64.1200(a)(1), calls to cell phones made using an

10  automatic telephone dialing system or prerecorded voice are prohibited unless made for

11  emergency purposes or with the "prior express consent of the party called."  In the Ninth Circuit,

12  "calls covered by paragraph (a)(1) require prior express consent, which may be given either

13  orally or in writing."  *Loyhayem v. Fraser Fin. & Ins. Servs., Inc*., 7 F.4th 1232, 1235 (9th Cir.

14  2021).  If the call "introduces an advertisement or constitutes telemarketing," using an automatic

15  telephone dialing system or prerecorded voice is prohibited without the "prior express **written**

16  consent of the called party" or the "prior express consent of the called party when the call is

17  made by or on behalf of a tax-exempt nonprofit organization."  47 C.F.R. §

18  64.1200(a)(2)(*emphasis added*).  Accordingly, if the call is not made "by or on behalf of a tax-

19  exempt nonprofit organization," under 64.1200(a)(2), there must be prior express written

20  consent.  *See Loyhayem* at 1235.

21  To the extent that SAHA moves for summary judgment on the three February 2021 calls,

22  its motion should be denied.  Even if SAHA was operating as a "tax-exempt nonprofit

23  organization," there are issues of fact as to whether the Plaintiff consented to at least some of the

24

calls.  SAHA acknowledges that it did not have the Plaintiff's consent for the initial call to 360-XXX-1019 on February 15, 2021.  Although during the call with Mr. Cotta on February 15, 2021 the Plaintiff expressly gave his permission for SAHA to contact him on both the 360-XXX-1019 and 972-XXX-5749 numbers (Dkt. 112-5 at 3), his February 17, 2021 email arguably revoked that consent (Dkt. 112-8).  The two other calls that used the prerecorded voice were made on February 19, 2021 and February 22, 2021.  To the extent that SAHA moves for summary judgment on the Plaintiff's TCPA claims (Dkt. 120) the motion should be denied.

**E.  PLAINTIFF'S CLAIMS FOR VIOLATIONS OF STATE LAW: THE WADAD, WTSA and CTSA**

Similar to the TCPA, WADAD prohibits the use of an automatic dialing and announcing device "for purposes of commercial solicitation."  RCW § 80.36.400(2).  The WTSA regulates persons engaged in "telephone solicitation."  RCW § 80.36.390.  For example, it requires that "[a] person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call within the first 30 seconds of the telephone call."  RCW § 80.36.390(2). Likewise, Washington's CTSA regulates commercial telephone solicitors or salespersons and sets out various requirements for them.  RCW § 19.158.11(1), (2) and RCW § 19.158.150.  All three of these statutes govern "commercial solicitation" or "telephone solicitation" which they define as "unsolicited" telephone calls "for the purpose of encouraging a person to purchase property, goods or services."  RCW § 80.36.400(1)(b)(WADAD); RCW § 80.36.390(1)(WTSA) and RCW § 19.158.020(2) (CTSA).

SAHA argues that summary judgment should be granted on the each of these claims because the calls were not solicitations.  Plaintiff moves for summary judgment on the WADAD

1    claim.  As stated above, there are issues of fact as to whether SAHA's calls were "commercial

2    solicitation" or "telephone solicitation" precluding summary judgment for either party.

3          SAHA further argues that summary judgment should be granted on the Plaintiff's

4    WADAD claims because it did not use an automatic dialing device.  Dkt. 120.  WADAD defines

5    an "automatic dialing and announcing device" as a "device which  automatically dials telephone

6    numbers and plays a recorded message once a connection is made."  RCW § 80.36.400(1)(a).

7    There are issues of fact as to whether SAHA's method of entering phone numbers into its system

8    and then the system generating a message, dialing the number, and playing the message

9    constitutes the use of an "automatic dialing and announcing device" under the WADAD.

10   Summary judgment on this claim should be denied.

11   **F.  PLAINTIFF'S STATE LAW CLAIM FOR VIOLATION OF WSPA**

12         SAHA moves for summary judgment on Plaintiff's WSPA claim arguing that RCW §

13   9.73.040 relates to crimes and does not apply here.  Dkt. 120.  While the Plaintiff's Second

14   Amended Complaint asserts a claim under RCW § 9.73.040, he quotes provisions of RCW §

15   9.73.**030**.  Dkt. 45 (*emphasis added*).  (RCW § 9.73.040 relates grounds for issuance of court

16   orders permitting the interception of private communications and does not appear to apply here.)

17   Accordingly, the Court will construe the Plaintiff's Second Amended Complaint broadly as one

18   under RCW § 9.73.030.

19         Under RCW § 9.73.030(1), it is "unlawful for any individual, partnership, corporation,

20   association . . . to intercept, or record any . . . [p]rivate communication transmitted by telephone .

21   . . between two or more individuals . . . without first obtaining the consent of all the participants

22   in the communication."  Further, "[a]ny person who, directly or by means of . . . [an] agent,

23   violates the provisions of this chapter shall be subject to legal action for damages, to be brought

24

by any other person claiming that a violation of this statute has injured his or her business, his or her person, or his or her reputation."  RCW § 9.73.060.

While it does not deny that it recorded some of the calls between its agents and the Plaintiff, SAHA argues that the claim should be dismissed because it contends that the Plaintiff himself recorded and posted the first phone call with SAHA on the internet.  Dkt. 120.  To the extent that SAHA is attempting to point out that the Plaintiff has failed to show that he has been injured in his "business, . . . person, . . . or reputation," because of his actions, the assertion is well taken.  The Plaintiff has failed to demonstrate that he has been injured by SAHA's alleged recordings of their conversations.  His claim under the WSPA should be dismissed.

## G.  SAHA'S FRAUD COUNTERCLAIM

There are nine essential elements of a fraud claim in Washington, all of which must be established by clear, cogent, and convincing evidence:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 166 (2012).

The Plaintiff's motion for summary judgment on SAHA's fraud counterclaim (Dkt. 111) should be denied.  While SAHA's theory on this claim is not well explained, it appears that it contends that Plaintiff is liable for fraud based on the following assessments of the elements:  as to the first element, a representation of existing fact, SAHA does not point to any particular representation from the Plaintiff.  Instead, it points to the Plaintiff's conduct on the February 15, 2021 call that led Mr. Cotta to believe that the Plaintiff was interested in SAHA's services. There are issues of fact as to whether this was sufficient to constitute a "representation."

Arguably, these representations were material – they induced SAHA to send out a loan package, meeting the second element.  As to the third and fourth elements, SAHA points to the Plaintiff's email and later statements in other litigation to show that the Plaintiff knew that he was not interested in SAHA's services but was actually solely motivated to garner information so that he could sue SAHA for TCPA damages.  The fifth element, Plaintiff's intent that his representations be acted upon, is met because the Plaintiff told SAHA he was interested and provided his contact information, including his phone number, address and email.  As to the sixth element, it is reasonable to infer that SAHA did not know that the Plaintiff was not interested their services.  Regarding the seventh and eighth elements, SAHA relied (and had a right to rely) on the Plaintiff's representations that he was interested in their services – it sent him an email with the loan packet.  Lastly, SAHA contends that it was damaged by the Plaintiff's conduct.  Dkt. 124.  To the extent that it asserts that it was damaged regarding the time Mr. Cotta and staff invested in creating and sending the loan packet, it is reasonable to infer that SAHA was damaged.  To the extent that it maintains it was damaged by the Plaintiff's decision to file this case, it has not shown that the filing of the case was proximately caused by the Plaintiff's conduct on the phone.  While SAHA's decision to send the loan packet to the Plaintiff gave him the information he sought – the name of the company he was dealing with and its contact information, SAHA has failed to show that the Plaintiff's conduct was the "but for" cause of the litigation.  Stated another way, SAHA has failed to show that the Plaintiff would not have filed the case against it had he not engaged in the objectionable conduct - acting like he was interested in SAHA's help when he was not on the phone call.  Although the amount of damages are likely low, SAHA has pointed to issues of fact precluding the Plaintiff's summary judgment on this fraud counterclaim.

## H.  SAHA'S FRAUD BY NON-DISCLOSURE COUNTERCLAIM

The Plaintiff's motion for summary judgment on SAHA's claim for fraud by non-disclosure (Dkt. 111) should be granted.  SAHA fails to provide the basic elements of the claim or explain its theory of Plaintiff's liability.  It contends that the Plaintiff knew of SAHA's potential liability under the TCPA when it called him and asserts that he had a "duty to disclose to SAHA his desire not receive such contact." Dkt. 124.  SAHA essentially maintains that this omission amounts to an affirmative representation of a material fact.  *Id.*  It fails to point to any authority to support its contention that the Plaintiff had a duty to disclose to SAHA that he did not want it to contact him further.

In Washington, for purposes of both claims for fraud or negligent misrepresentation, "the duty to disclose arises only in the context of an inherently fiduciary relationship or some type of special relationship of trust and confidence giving rise to quasi-fiduciary duties of disclosure." *Baker Boyer Nat'l Bank v. Foust*, 6 Wn. App. 2d 375, 387 (2018).  SAHA makes no showing that such a relationship exists here between SAHA and the Plaintiff.  The claim should be dismissed.

## I.   SAHA'S NEGLIGENT MISREPRESENTATION CLAIM

In Washington, the elements for a negligent misrepresentation claim are:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Specialty Asphalt & Constr., LLC v. Lincoln Cnty.*, 191 Wn.2d 182, 196 (2018)(*quoting Ross v. Kirner*, 162 Wash.2d 493, 499 (2007)).  Each element must be proven by "clear, cogent and convincing evidence." *Id.*

1    The Plaintiff's motion for summary judgment on SAHA's claim for negligent

2  misrepresentation (Dkt. 111) should be denied.  Regarding the first element, there are issues of

3  fact as to whether Plaintiff's conduct on the February 15, 2021 call to be construed as

4  "information for the guidance of others in their business transactions that was false."  There is no

5  dispute that the Plaintiff knew or should have known that the information he gave SAHA was

6  supplied to have it start the loan modification process, meeting the second element.  As to the

7  third element, there are issues of fact as to whether it is reasonable to infer that the Plaintiff was

8  negligent in communicating his desire to use SAHA's services when he had no desire to do so.

9  SAHA demonstrated that it relied on the false information when Mr. Cotta put together the

10  Plaintiff's loan packet and emailed it to him, meeting the fourth element.  As to the fifth element,

11  it is reasonable to infer from the record that SAHA reliance on the Plaintiff's conduct on the call

12  created a situation where it was sensible for it to send the loan packet.  It is equally reasonable to

13  conclude that it was not.  SAHA's claim has some difficulty on the last element, that the false

14  information caused it damages.  As was the case with the fraud claim, to the extent that it asserts

15  that it was damaged regarding the time Mr. Cotta and others invested in creating and sending the

16  loan packet, it has shown that it was damaged.  It has not pointed to sufficient issues of fact that

17  it was the Plaintiff's conduct on the phone that caused it to have to defend itself in this litigation.

18    There are issues of fact as to SAHA's claim for negligent misrepresentation.  The Plaintiff's

19  motion for summary judgment on that claim should be denied.

20              **III.    ORDER**

21  Therefore, it is hereby **ORDERED** that:

22    • Plaintiff's Motions to Strike (Dkts. 128 and 131) **ARE DENIED;**

23

24

- Plaintiff's Motion for Summary Judgment on Counterclaim (Dkt. 111) **IS GRANTED** as to the counterclaim for fraud by non-disclosure and **DENIED** in all other respects;
  - SAHA's counterclaim for fraud by non-disclosure **IS DISMISSED**; and
- SAHA's Cross Motion for Counterclaim in Favor of SAHA (Dkt. 124) **IS DENIED**;
- Defendant SAHA's Motion to [sic] for Summary Judgment Dismissal on Plaintiff's Second Amended Complaint (Dkt. 120) **IS GRANTED** as to the Plaintiff's claims for violation of the WSPA, and **DENIED** in all other respects;
  - The Plaintiff's claims for violation of the WSPA **ARE DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 13th day of February, 2023.

_____
ROBERT J. BRYAN
United States District Judge